[This opinion has been published in *Ohio Official Reports* at 78 Ohio St.3d 134.]

KULCH, APPELLANT, *v*. STRUCTURAL FIBERS, INC. ET AL., APPELLEES.

[Cite as *Kulch v. Structural Fibers, Inc.*, 1997-Ohio-219.]

*Employment relations—At-will employee discharged or disciplined for filing complaint with OSHA is entitled to maintain common-law tort action against employer for wrongful discharge/discipline in violation of public policy—R.C. 4113.52, construed.*

———————————

1.  An at-will employee who is discharged or disciplined for filing a complaint with the Occupational Safety and Health Administration concerning matters of health and safety in the workplace is entitled to maintain a common-law tort action against the employer for wrongful discharge/discipline in violation of public policy pursuant to *Greeley v. Miami Valley Maintenance Contrs., Inc.* (1990), 49 Ohio St.3d 228, 551 N.E.2d 981, and its progeny.

2.  R.C. 4113.52 does not preempt a common-law cause of action against an employer who discharges or disciplines an employee in violation of that statute.

3.  An at-will employee who is discharged or disciplined in violation of the public policy embodied in R.C. 4113.52 may maintain a common-law cause of action against the employer pursuant to *Greeley v. Miami Valley Maintenance Contrs., Inc.* (1990), 49 Ohio St.3d 228, 551 N.E.2d 981, and its progeny, so long as that employee had fully complied with the statute and was subsequently discharged or disciplined. (*Greeley*, *supra*, approved; *Painter v. Graley* [1994], 70 Ohio St.3d 377, 639 N.E.2d 51, paragraphs two and three of the syllabus, approved; *Phung v. Waste Mgt., Inc.* [1986], 23 Ohio St.3d 100, 23 OBR 260, 491 N.E.2d 1114, overruled.)

4.    The remedies available pursuant to R.C. 4113.52 for violations of the statute and the remedies available for the tort of wrongful discharge are cumulative.

5.    An at-will employee who is discharged or disciplined in violation of R.C. 4113.52 may maintain a statutory cause of action for the violation, a common-law cause of action in tort, or both, but is not entitled to double recovery.

_____

(No. 95-650—Submitted October 8, 1996—Decided April 16, 1997.)

APPEAL from the Court of Appeals for Geauga County, No. 93-G-1824.

_____

{¶ 1} Structural Fibers, Inc., appellee, is an operating division of appellee ESSEF Corporation. Structural Fibers is located in Chardon, Ohio, where it manufactures tanks or "vessels" used in well water systems. In 1976, James Kulch, appellant, was hired by Structural Fibers as a factory worker. In late 1990, Kulch began experiencing serious health problems which he believed were attributable to toxic chemicals in the air at his workplace. Other employees had also experienced health problems, such as serious allergic reactions, rashes, bloody noses, skin irritation, and respiratory difficulties. Therefore, Kulch and others verbally complained to management concerning the situation. However, according to Kulch, management responded to his complaints by informing him that he could either do his job or find employment elsewhere.

{¶ 2} In January 1991, after Structural Fibers had done nothing in response to Kulch's verbal complaints, Kulch filed a written report with the Occupational Safety and Health Administration ("OSHA"). In his report, Kulch stated that employees in the "winding area" of Structural Fibers' main plant were complaining of health problems "from chemicals in the air, such as: acetone, styrene, epoxy resins, colbalt [sic] mixes." In April 1991, OSHA inspected the plant and, among other things, performed air monitoring in the winding area. The air sampling data

2

revealed that the air contaminants in the winding area did not violate OSHA standards. However, during the on-site inspection, OSHA found several serious violations of the Occupational Safety and Health Act of 1970, Section 651 *et seq.*, Title 29, U.S. Code. Consequently, substantial fines were assessed against Structural Fibers.[1] The violations found by OSHA were apparently unrelated to the matters set forth in Kulch's January 1991 OSHA complaint.

{¶ 3} According to Kulch, Structural Fibers and the ESSEF Corporation (collectively, "appellees") retaliated against him for having filed the report with OSHA. Specifically, Kulch's coworkers were approached by management and asked to confirm the identity of the person who had filed the OSHA complaint. At the same time, appellees warned employees not to associate with Kulch. Appellees threatened that anyone found associating with Kulch would "go down" with him. On one occasion, Kulch was physically threatened by a supervisor for having reported the company to OSHA. Additionally, Kulch's supervisors began filling his employment file with lengthy write-ups and entries. Between June 7 and October 7, 1991, write-ups or reports had been placed in Kulch's personnel file on eleven separate occasions, sometimes more than once on the same day.

{¶ 4} In October 1991, management at Structural Fibers decided to secretly videotape Kulch during work hours to monitor his job performance. A hidden camera was placed near Kulch's work station and his performance was surveyed over a period of two days. The act of videotaping Kulch was the first time in company history that surveillance cameras were used to document an employee's job performance. On October 17, 1991, Kulch was discharged from his employment with Structural Fibers. Following the discharge, Kulch filed a complaint with OSHA, asserting that appellees had discharged him for having filed

---

1. The fines imposed by OSHA were later reduced under the terms of a settlement agreement between OSHA and Structural Fibers.

previous OSHA complaints. In July 1992, OSHA dismissed Kulch's retaliation complaint.

{¶ 5} The parties dispute the reason for Kulch's termination. Kulch contends that he was discharged from his employment in reprisal for having reported Structural Fibers to OSHA. Conversely, appellees specifically deny having ever retaliated against Kulch. Appellees claim that they videotaped Kulch and began to closely monitor his job performance simply because Kulch had been suspected of improperly performing his job. Appellees maintain that they never knew about Kulch's January 1991 OSHA complaint until well after the complaint had been filed. Appellees claim that Kulch was terminated for failure to properly perform his job and for falsely indicating on his time card that he had performed work he had not in fact completed.

{¶ 6} In December 1991, Kulch filed suit against Structural Fibers. In an amended complaint, Kulch added appellee ESSEF Corporation as a defendant and set forth claims for violations of Ohio's Whistleblower Statute, R.C. 4113.52, and wrongful discharge in violation of public policy. Kulch also set forth claims for, among other things, negligent and intentional infliction of emotional distress. On May 15, 1992, appellees moved to dismiss the amended complaint for failure to state a claim. The trial court denied appellees' motion to dismiss. Thereafter, following a period of discovery, appellees moved for summary judgment on Kulch's claims for violations of the Whistleblower Statute and his claims for negligent and intentional infliction of emotional distress. Appellees also moved for judgment on the pleadings with respect to, among other things, Kulch's claim of wrongful discharge in violation of public policy. By judgment entry filed November 10, 1993, the trial court granted appellees' motion for judgment on the pleadings and for summary judgment, stating:

"This case is before the court on defendants' motion for judgment on the pleadings and for summary judgment.

4

"Plaintiff seeks to recover damages for wrongful discharge pursuant to the Whistleblower Act, R.C. 4113.52. Plaintiff reported to [OSHA] that the defendant[s'] work place was unsafe because defendant[s] permitted the use and discharge into the air of toxic and corrosive chemicals. Defendant[s] [claim] that plaintiff was discharged, not for whistleblowing, but for unsatisfactory work performance. For the purposes of this motion, the court must assume that defendant[s] discharged plaintiff because plaintiff reported defendant[s] to OSHA.

"In addition to a violation of the Whistleblower Act, plaintiff alleges that his discharge was unlawful and in conflict with Ohio's public policy as established in *Greeley v. Miami Valley Maintenance Contractors, Inc*. (1990), 49 Ohio St.3d 228 [551 N.E.2d 981]. First, the court is of the opinion that the Whistleblower Act in Ohio has preempted this field so that * * * a public policy exception to the employment at will doctrine does not exist in Ohio for whistleblowing. * * *

"As to the violations of the Whistleblower Statute, R.C. 4113.52 specifically provides that an employee must first give oral and written notice to the employer in order to be protected by the statute. It is undisputed in this case that plaintiff orally complained to the employer about the unsafe or unhealthy condition in the plant, but that he never made a written complaint to the employer.

"* * *

"Accordingly, the court holds that plaintiff is not afforded protection pursuant [to] R.C. 4113.52 and that no genuine issue exists as to any material fact and that judgment should be granted as a matter of law with respect to the claimed violation of statute.

"* * *

"Finally, plaintiff claims that he suffered emotional distress because of defendant[s'] intentional and negligent actions. Construing the facts most favorably for the plaintiff, the court concludes that defendant[s'] conduct was neither extreme nor outrageous.

"Accordingly, the court grants defendant[s'] motion for summary judgment and finds for defendant[s] on the complaint."

**{¶ 7}** On appeal, the court of appeals affirmed the judgment of the trial court. With respect to Kulch's claim of wrongful discharge in violation of public policy, the court of appeals agreed with the trial court's determination that R.C. 4113.52 preempts the formation of a public-policy exception to the employment-at-will doctrine within the specific context of whistleblowing. The court of appeals also agreed with the trial court's decision granting summary judgment in favor of appellees on Kulch's statutory whistleblower cause of action, finding that Kulch was not entitled to avail himself of the protections of R.C. 4113.52(A)(1)(a) because he never made a written report to his employer concerning the alleged unsafe or unhealthy condition of his workplace. Additionally, the court of appeals upheld the grant of summary judgment in favor of appellees on the claims for negligent and intentional infliction of emotional distress.

**{¶ 8}** The cause is now before this court pursuant to the allowance of a discretionary appeal.

———————————

*Dworken & Bernstein Co., L.P.A.*, *Patrick J. Perotti*, *Robert J. Hoffman* and *Shawn W. Maestle*, for appellant.

*Roetzel & Andress* and *Gregory P. Szuter*, for appellees.

*Louis A. Jacobs*; *Spater, Gittes, Schulte & Kolman* and *Frederick M. Gittes*, urging reversal for *amici curiae*, Ohio Employment Lawyers Association; Ohio NOW Education and Legal Fund; National Conference of Black Lawyers, Columbus Chapter; and Police Officers for Equal Rights.

———————————

**DOUGLAS, J.**

**{¶ 9}** This appeal presents three main issues for our consideration. The first is whether the court of appeals erred in finding that appellees were entitled to

summary judgment on Kulch's statutory cause of action for violations of R.C. 4113.52, Ohio's Whistleblower Statute.[2] The second concerns the court of appeals'

---

2. R.C. 4113.52 provides that:

"(A)(1)(a)  If an employee becomes aware in the course of his employment of a violation of any state or federal statute or any ordinance or regulation of a political subdivision that his employer has authority to correct, and the employee reasonably believes that the violation either is a criminal offense that is likely to cause an imminent risk of physical harm to persons or a hazard to public health or safety or is a felony, the employee orally shall notify his supervisor or other responsible officer of his employer of the violation and subsequently shall file with that supervisor or officer a written report that provides sufficient detail to identify and describe the violation.  If the employer does not correct the violation or make a reasonable and good faith effort to correct the violation within twenty-four hours after the oral notification or the receipt of the report, whichever is earlier, the employee may file a written report that provides sufficient detail to identify and describe the violation with the prosecuting authority of the county or municipal corporation where the violation occurred, with a peace officer, with the inspector general if the violation is within his jurisdiction, or with any other appropriate public official or agency that has regulatory authority over the employer and the industry, trade, or business in which he is engaged.

"(b)  If an employee makes a report under division (A)(1)(a) of this section, the employer, within twenty-four hours after the oral notification was made or the report was received or by the close of business on the next regular business day following the day on which the oral notification was made or the report was received, whichever is later, shall notify the employee, in writing, of any effort of the employer to correct the alleged violation or hazard or of the absence of the alleged violation or hazard.

"(2)  If an employee becomes aware in the course of his employment of a violation of Chapter 3704., 3734., 6109., or 6111. of the Revised Code that is a criminal offense, the employee directly may notify, either orally or in writing, any appropriate public official or agency that has regulatory authority over the employer and the industry, trade, or business in which he is engaged.

"(3)  If an employee becomes aware in the course of his employment of a violation by a fellow employee of any state or federal statute, any ordinance or regulation of a political subdivision, or any work rule or company policy of his employer and the employee reasonably believes that the violation either is a criminal offense that is likely to cause an imminent risk of physical harm to persons or a hazard to public health or safety or is a felony, the employee orally shall notify his supervisor or other responsible officer of his employer of the violation and subsequently shall file with that supervisor or officer a written report that provides sufficient detail to identify and describe the violation.

"(B)  Except as otherwise provided in division (C) of this section, no employer shall take any disciplinary or retaliatory action against an employee for making any report authorized by division (A)(1) or (2) of this section, or as a result of the employee's having made any inquiry or taken any other action to ensure the accuracy of any information reported under either such division. No employer shall take any disciplinary or retaliatory action against an employee for making any report authorized by division (A)(3) of this section if the employee made a reasonable and good faith effort to determine the accuracy of any information so reported, or as a result of the employee's having made any inquiry or taken any other action to ensure the accuracy of any information reported under that division.  For purposes of this division, disciplinary or retaliatory action by the employer includes, without limitation, doing any of the following:

"(1)  Removing or suspending the employee from employment;

determination that R.C. 4113.52 preempts the formation of an independent common-law cause of action in tort for an at-will employee who is discharged or disciplined for "whistleblowing." The third involves the question whether the court of appeals erred in affirming the grant of summary judgment in favor of appellees on Kulch's claims for negligent and intentional infliction of emotional distress. For the reasons that follow, we affirm the judgment of the court of appeals in part, reverse it in part, and remand this cause to the trial court for further proceedings.

I

Appellant's Statutory Cause of Action

---

"(2) Withholding from the employee salary increases or employee benefits to which the employee is otherwise entitled;

"(3) Transferring or reassigning the employee;

"(4) Denying the employee a promotion that otherwise would have been received;

"(5) Reducing the employee in pay or position.

"(C) An employee shall make a reasonable and good faith effort to determine the accuracy of any information reported under division (A)(1) or (2) of this section. If the employee who makes a report under either division fails to make such an effort, he may be subject to disciplinary action by his employer, including suspension or removal, for reporting information without a reasonable basis to do so under division (A)(1) or (2) of this section.

"(D) If an employer takes any disciplinary or retaliatory action against an employee as a result of the employee's having filed a report under division (A) of this section, the employee may bring a civil action for appropriate injunctive relief or for the remedies set forth in division (E) of this section, or both, within one hundred eighty days after the date the disciplinary or retaliatory action was taken, in a court of common pleas in accordance with the rules of civil procedure. A civil action under this division is not available to an employee as a remedy for any disciplinary or retaliatory action taken by an appointing authority against the employee as a result of the employee's having filed a report under division (A) of section 124.341 of the Revised Code.

"(E) The court, in rendering a judgment for the employee in an action brought pursuant to division (D) of this section, may order, as it determines appropriate, reinstatement of the employee to the same position he held at the time of the disciplinary or retaliatory action and at the same site of employment or to a comparable position at that site, the payment of back wages, full reinstatement of fringe benefits and seniority rights, or any combination of these remedies. The court also may award the prevailing party all or a portion of the costs of litigation, and if the employee who brought the action prevails in the action, may award the prevailing employee reasonable attorney's fees, witness fees, and fees for experts who testify at trial, in an amount the court determines appropriate. If the court determines that an employer deliberately has violated division (B) of this section, the court, in making an award of back pay, may include interest at the rate specified in section 1343.03 of the Revised Code.

"(F) Any report filed with the inspector general under this section shall be filed as a complaint in accordance with section 121.46 of the Revised Code."

**{¶ 10}** The record reveals that appellant orally notified appellees of claimed health and safety violations at the Structural Fibers plant long before he reported the matter to OSHA. However, appellant never provided appellees with a written report concerning these alleged violations. The trial court and the court of appeals held that R.C. 4113.53(A)(1)(a) required appellant to notify appellees both orally *and in writing* concerning the alleged safety and health violations in order to gain statutory protection as a whistleblower. Therefore, the trial court and the court of appeals held that appellant was not entitled to statutory protection under R.C. 4113.52 because he had failed to strictly comply with the requirements of R.C. 4113.52(A)(1)(a).

**{¶ 11}** Appellant presents four propositions of law for our consideration. Propositions of Law Nos. 1 and 3 read as follows:

"Proposition of Law No. 1

"If an employer receives oral or written notification from an employee of a claimed health or safety violation as described in R.C. §4113.52(A)(1)(a), and does not correct the violation or make a reasonable and good faith effort to correct the violation within 24 hours, the employee may file a written report with a regulatory official or agency as authorized by R.C. §4113.52(A)(1)(a). That filing invokes the protection of the whistleblower statute. R.C. §4133.52(A)-(B), explained."

"Proposition of Law No. 3

"A court addressing a summary judgment motion must consider not only the materials properly attached to the briefing in support and in opposition, but also all pleadings on file in the case. A court may not properly grant summary judgment on the ground that a party has not asserted a claim or theory in the lower court, where such claim or theory is plainly set forth in the complaint or other pleading properly on file. * * *"

**{¶ 12}** In his first proposition of law, appellant contends that the trial court and the court of appeals erred in finding that he was required under R.C.

4113.52(A)(1)(a) to notify appellees *both orally and in writing* concerning the alleged safety and health violations. Specifically, appellant interprets R.C. 4113.52(A)(1)(a) as providing that if an employer receives oral notification from an employee of a claimed health or safety violation of the type described in R.C. 4113.52(A)(1)(a), and the employer fails to correct the violation or make a reasonable and good faith effort to correct the violation within twenty-four hours, the employee may file a written report with an appropriate individual or agency specified in R.C. 4113.52(A)(1)(a) and is entitled to the protections of the Whistleblower Statute. We reject appellant's interpretation of R.C. 4113.52(A)(1)(a).

{¶ 13} Recently, in *Contreras v. Ferro Corp.* (1995), 73 Ohio St.3d 244, 652 N.E.2d 940, this court outlined the specific procedures that must be followed under R.C. 4113.52(A)(1)(a) for an employee to gain statutory protection for reporting certain information to outside authorities. In *Contreras*, *supra*, at 246-249, 652 N.E.2d at 942-944, we stated:

"Ohio's Whistleblower Statute, R.C. 4113.52, provides specific procedures an employee must follow to gain statutory protection as a whistleblower. R.C. 4113.52(A)(1)(a) addresses the situation where an employee in the course of his or her employment becomes aware of a violation of any state or federal statute or any ordinance or regulation of a political subdivision that the employer has the authority to correct, and the employee reasonably believes that the violation either is a criminal offense that is likely to cause an imminent risk of physical harm or a hazard to public health or safety or is a felony. Under such circumstances, *R.C. 4113.52(A)(1)(a) requires that the employee orally notify his or her supervisor or other responsible officer of the employer of the violation and subsequently file with that person a written report* that provides sufficient detail to identify and describe the violation. *If these requirements have been satisfied* and the employer does not correct the violation or make a reasonable and good faith effort to correct the

10

violation within twenty-four hours after the oral notification or the receipt of the written report, whichever is earlier, the employee may *then* file a written report with the prosecuting authority of the county or municipal corporation where the violation occurred or with some other appropriate person specified in R.C. 4113.52(A)(1)(a).

"Clearly, the provisions of R.C. 4113.52(A)(1) contemplate that the employer shall be given the opportunity to correct the violation. The statute mandates that the employer be informed of the violation *both orally and in writing*. An employee who fails to provide the employer with the required oral notification *and written report* is not entitled to statutory protection for reporting the information to outside authorities. If the employee provides the employer with oral notification *and a written report*, the employee may be entitled to the protections of the whistleblower statute for reporting the information to outside authorities only if the employer has failed to correct the violation or make a reasonable and good faith effort to correct the violation within twenty-four hours after the oral notification or the receipt of the written report, whichever is earlier. R.C. 4113.52(A)(1)(b) contemplates that the employer will apprise the employee of its efforts to correct the violation. That provision mandates that if an employee makes a report to his or her employer under R.C. 4113.52(A)(1)(a), the employer, within twenty-four hours after the oral notification was made or the report received or by the close of business on the next regular business day, whichever is later, must provide written notice to the employee of any efforts the employer made to correct the alleged violation or hazard or of the absence of the alleged violation or hazard. Only after all these various procedures and requirements have been satisfied, and only if the employer has not corrected the violation or made a reasonable and good faith effort to correct the violation may the employee report the violation to outside authorities -- but only those authorities specified in R.C. 4113.52(A)(1)(a). "Therefore, to restate, *R.C. 4113.52(A)(1) protects an employee for reporting certain information to outside authorities only if the following requirements have*

*first been satisfied: (1) the employee provided the required oral notification* to the employee's supervisor or other responsible officer of the employer, *(2) the employee filed a written report with the supervisor or other responsible officer*, and (3) the employer failed to correct the violation or to make a reasonable and good faith effort to correct the violation. Further, R.C. 4113.52(A)(1)(a) sets forth the sole acceptable manner in which the employee may 'blow the whistle' to outside authorities. Specifically, the employee may file a written report that provides sufficient detail to identify and describe the violation with the proper prosecuting authority or other appropriate official or agency with regulatory authority over the employer and the industry, trade or business in which the employer is engaged. An employee who fails to follow the specific requirements of the statute is not a protected whistleblower and, accordingly, may not bring a wrongful discharge action pursuant to R.C. 4113.52." (Emphasis added in part and deleted in part; footnote omitted.)

{¶ 14} We continue to believe that our discussion in *Contreras* concerning the specific procedural reporting requirements of R.C. 4113.52(A)(1)(a) comports with the express terms of the Whistleblower Statute. Here, appellant orally notified appellees of the claimed health and safety violations concerning airborne chemicals at the Structural Fibers plant. Appellees failed to address appellant's concerns. Thereafter, appellant proceeded to report the matter to OSHA without ever having provided appellees with a written report describing the alleged violations. The fact that appellant reported to OSHA without having notified his employer both orally *and in writing* concerning the alleged health and safety violations is fatal to his claim for protection under R.C. 4113.52(A)(1)(a).

{¶ 15} Nevertheless, in his third proposition of law, appellant contends that he was a protected whistleblower under the terms of R.C. 4113.52(A)(2). R.C. 4113.52(A)(2) addresses the situation where an employee becomes aware in the course of his or her employment of a violation of R.C. Chapter 3704 (Air Pollution

Control Act), 3734 (Solid and Hazardous Wastes Act), 6109 (Safe Drinking Water Act), or 6111 (Water Pollution Control Act) that is a criminal offense. Under such circumstances, the employee may *directly* notify any appropriate public official or agency with regulatory authority over the employer and the industry, trade, or business in which the employer is engaged. There is no requirement in R.C. 4113.52(A)(2) that the employee notify his or her employer of the perceived violations. Therefore, appellant suggests that the trial court erred in dismissing his statutory cause of action solely because he had failed to file a written report with his employer.

{¶ 16} The court of appeals refused to address appellant's arguments in this regard, stating:

"In the second assignment of error, appellant maintains that the trial court erred in dismissing his whistle-blower claim because R.C. 4113.52(A)(2) dispenses with any notice to the employer when the complaint involves R.C. Chapters 3704 and 3734. * * *

"A review of the record, however, reveals that appellant never argued this theory in the trial court. It is well established that an appellant may not assert a new theory for the first time before the appellate court. * * * Accordingly, this court will not address appellant's argument that no notice to the employer is required for complaints regarding R.C. Chapters 3704 and 3734."

{¶ 17} However, we find that appellant clearly raised a claim for protection under R.C. 4113.52(A)(2) in Count One of his amended complaint, wherein he set forth the following relevant allegations in support of his statutory cause of action for violations of the Whistleblower Statute:

"4. Beginning in late January, 1991, in the course of his employment with defendant, plaintiff became aware of activities, conditions and company policies at the work place which constituted an imminent risk of physical harm to himself and other employees and a hazard to public health.

13

"5. Among other things, these included the use and discharge into the air in the work area of highly toxic or corrosive chemicals such as acetone, styrene, epoxy resins, and cobalt mixes.

"6. *These activities, conditions and company policies at the work place constitute a violation of various state and federal laws including* but not limited to the Occupational Safety and Health Act of 1970 and *Ohio Revised Code Chapters 3704 and 3734*.

"7. *These activities, conditions and company policies also constitute a criminal offense under those laws*.

"* * *

"10. When the problems were not corrected, plaintiff reported them to the Occupational Safety and Health Administration. * * *

"11. Shortly after plaintiff reported these matters to OSHA, defendant began to discriminate and retaliate against plaintiff because of making this report and these charges.

"* * *

"17. Defendant's conduct [in retaliating against appellant for filing a report with OSHA], is unlawful retaliation, specifically prohibited by R.C. 4113.51-.52 * * *." (Emphasis added.)

{¶ 18} A fair reading of the amended complaint reveals that appellant raised a claim for protection under R.C. 4113.52(A)(2) by alleging that he had reported to OSHA concerning perceived criminal violations of R.C. Chapters 3704 and 3734. R.C. 4113.52(A)(2) specifically authorizes an employee to report such matters *directly* to any appropriate public official or agency having regulatory authority over the employer. Therefore, as a matter of law, there is no requirement for a reporter of information under R.C. 4113.52(A)(2) to inform his or her employer, either orally or in writing, concerning violations of the type described in R.C. 4113.52(A)(2). Accordingly, we disagree with the court of appeals' conclusion that

14

appellant has somehow waived his claim that he was a protected reporter of information under R.C. 4113.52(A)(2). The claim was specifically asserted in the factual allegations of appellant's amended complaint. Apparently, the court of appeals believed that appellant was obligated to raise the issue of R.C. 4113.52(A)(2) in response to appellees' motion for summary judgment. However, appellees' motion for summary judgment did not attack appellant's claim for protection under R.C. 4113.52(A)(2). See discussion *infra*. Therefore, any omission by appellant to defend his (A)(2) claim for whistleblower protection in response to appellees' motion for summary judgment cannot constitute an abandonment of that claim.

{¶ 19} Appellees contend that they were entitled to summary judgment on the statutory whistleblower cause of action despite appellant's claim for protection under R.C. 4113.52(A)(2). Specifically, appellees claim that their motion for summary judgment obligated appellant to produce evidence "beyond the allegations and defenses of his pleading to show facts of his awareness about environmental crimes under R.C. Chapters 3704, 3734, 6109 or 6111 * * *." To support this argument, appellees cite *Wing v. Anchor Media, Ltd. of Texas* (1991), 59 Ohio St.3d 108, 570 N.E.2d 1095, paragraph three of the syllabus, wherein a majority of this court held that "[a] motion for summary judgment forces the nonmoving party to produce evidence on any issue for which that party bears the burden of production at trial." However, in *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 295, 662 N.E.2d 264, 275, we limited paragraph three of the syllabus of *Wing*. In *Dresher*, at 293, 662 N.E.2d at 274, we held:

"[A] party seeking summary judgment, on the ground that the nonmoving party cannot prove its case, bears the initial burden of informing the trial court of the basis for the motion, and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on the essential element(s) of the nonmoving party's claims. The moving party cannot discharge

15

its initial burden under Civ.R. 56 simply by making a conclusory assertion that the nonmoving party has no evidence to prove its case. Rather, *the moving party must be able to specifically point to some evidence of the type listed in Civ.R. 56(C) which affirmatively demonstrates that the nonmoving party has no evidence to support the nonmoving party's claims. If the moving party fails to satisfy its initial burden, the motion for summary judgment must be denied.* However, if the moving party has satisfied its initial burden, the nonmoving party then has a reciprocal burden outlined in Civ.R. 56(E) to set forth specific facts showing that there is a genuine issue for trial and, if the nonmovant does not so respond, summary judgment, if appropriate, shall be entered against the nonmoving party."[3] (Emphasis added in part and deleted in part.)

---

3. Civ.R. 56 sets forth, among other things, the standards to be applied in a summary judgment proceeding. Civ.R. 56 provides:

"(A) For party seeking affirmative relief. A party seeking to recover upon a claim, counterclaim, or cross-claim or to obtain a declaratory judgment may, at any time after the expiration of the time permitted under these rules for a responsive motion or pleading by the adverse party, or after service of a motion for summary judgment by the adverse party, move with or without supporting affidavits for a summary judgment in his favor upon all or any part thereof. If the action has been set for pretrial or trial, a motion for summary judgment may be made only with leave of court.

"(B) For defending party. A party against whom a claim, counterclaim, or cross-claim is asserted or a declaratory judgment is sought may at any time, move with or without supporting affidavits for a summary judgment in his favor as to all or any part thereof. If the action has been set for pretrial or trial, a motion for summary judgment may be made only with leave of court.

"(C) Motion and proceedings thereon. The motion shall be served at least fourteen days before the time fixed for hearing. The adverse party prior to the day of hearing may serve and file opposing affidavits. Summary judgment shall be rendered forthwith if the pleading, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule. A summary judgment shall not be rendered unless it appears from such evidence or stipulation and only therefrom, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, such party being entitled to have the evidence or stipulation construed most strongly in his favor. A summary judgment, interlocutory in character, may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages.

"* * *

"(E) Form of affidavits; further testimony; defense required. Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in

{¶ 20} Here, appellant's amended complaint clearly raised a claim for whistleblower protection under R.C. 4113.52(A)(2). In the amended complaint, appellant also sought to advance a claim for protection under R.C. 4113.52(A)(1)(a). In their motion for summary judgment, appellees asserted that they were entitled to judgment on appellant's entire statutory cause of action for violations of the Whistleblower Statute, stating that "(1) Kulch cannot establish a *prima facie* case [of violations of the Whistleblower Statute] because he failed to satisfy the detailed statutory prerequisites to filing a lawsuit under R.C. §4113.52; and, (2) Kulch was terminated for legitimate business reasons * * *." In a memorandum in support of the motion, appellees argued that appellant could not establish a prima facie case of violations of the Whistleblower Statute for several reasons. First, appellees argued that Kulch's report to OSHA did not concern criminal violations of the Occupational Safety and Health Act of 1970, Section 651 *et seq.*, Title 29, U.S. Code. In this regard, appellees claimed that Kulch's report to OSHA was not a report concerning a "criminal offense" within the meaning of R.C. 4113.52*(A)(1)(a)*. Second, appellees argued that, contrary to R.C. 4113.52*(A)(1)(a)*, Kulch had failed to orally notify them of health and safety violations before reporting the matter to OSHA. Third, appellees asserted that Kulch had never provided them with a written report concerning the alleged health and safety violations. Alternatively, appellees argued that Kulch could not establish a prima facie case of violations of the Whistleblower Statute, since Kulch had been terminated for, *inter alia*, unsatisfactory work performance. To support these

___

evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith. The court may permit affidavits to be supplemented or opposed by depositions or by further affidavits. When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleadings, but his response, by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him."

various arguments, appellees relied upon deposition testimony, affidavits, and other materials of the type listed in Civ.R. 56(C).

{¶ 21} In response to the motion for summary judgment, appellant relied upon evidentiary materials of the type listed in Civ.R. 56(C) indicating that there were genuine issues of material fact remaining to be litigated concerning the reasons for his termination. Appellant also pointed to evidence indicating that he had verbally notified appellees regarding the conditions at the Structural Fibers plant before he reported the matter to OSHA, but he did not raise any specific issue or argument concerning R.C. 4113.52(A)(2). However, in their motion for summary judgment, appellees pointed to no evidentiary materials indicating the lack of a genuine issue of material fact whether Kulch was a protected whistleblower under the terms of R.C. 4113.52(A)(2) for having directly reported to OSHA concerning alleged criminal violations of R.C. Chapters 3704 and 3734.

{¶ 22} Appellees' motion for summary judgment clearly dealt with appellant's failure to comply with the specific reporting requirements of R.C. 4113.52*(A)(1)(a)*. In this regard, appellees were successful in defeating any claim that appellant was a protected whistleblower under the provisions of R.C. 4113.52*(A)(1)(a),* since it was undisputed that appellant had reported to OSHA without having notified his employer, both orally *and in writing*, concerning the alleged criminal violations. However, appellees never satisfied (or even attempted to satisfy) their initial burden under Civ.R. 56 of demonstrating that there were no genuine issues of material fact concerning appellant's claim for whistleblower protection under the provisions of R.C. 4113.52*(A)(2)*. Thus, appellant had no obligation to respond to the motion by raising or otherwise supporting the factual allegations already contained in his amended complaint pertaining to his claim for possible whistleblower protection under R.C. 4113.52*(A)(2)*.

{¶ 23} The trial court granted summary judgment in favor of appellees on appellant's entire statutory cause of action solely because appellant had not

complied with the specific reporting requirements of R.C. 4113.52*(A)(1)(a).* Appellant's amended complaint sought whistleblower protection under R.C. 4113.52(A)(2) as well as 4113.52(A)(1)(a). By entering summary judgment against appellant on his entire statutory claim, the trial court erred to the extent that it dismissed appellant's claim for protection under R.C. 4113.52(A)(2). Appellees never challenged appellant's claim that his report to OSHA was an authorized report under R.C. 4113.52(A)(2). Moreover, contrary to appellees' suggestions, appellant had no obligation to respond to the motion for summary judgment by producing evidence on every element of his claim for protection under R.C. 4113.52(A)(2), since appellees never discharged their initial burden of demonstrating the absence of a genuine issue of material fact concerning that claim and their entitlement to judgment as a matter of law.

{¶ 24} Appellees now protest that appellant never reported the alleged criminal violations of R.C. Chapters 3704 and 3734 to the public authority responsible for enforcement of those laws. Appellees also contend that the matters reported to OSHA did not constitute criminal violations of R.C. Chapters 3704 and 3734. Appellant counters appellees' first argument by noting that (1) R.C. 4113.52(A)(2) authorizes an employee to report alleged criminal violations involving R.C. Chapters 3704 and 3734 to *any* appropriate public official or agency that has regulatory authority over the employer, and (2) OSHA was a regulatory agency with regulatory authority over appellees. Appellant counters appellees' second argument by asserting that his report to OSHA clearly involved criminal violations of R.C. Chapters 3704 and 3734. Additionally, appellant claims that his report to OSHA was authorized under R.C. 4113.52(A)(2) even if no *actual violation* of R.C. Chapters 3704 and 3734 occurred, since he *reasonably believed* that appellees' conduct involved criminal violations of those Chapters of the Revised Code. Appellant's contentions in this regard are bolstered by our recent decision in *Fox v. Bowling Green* (1996), 76 Ohio St.3d 534, 668 N.E.2d 898,

wherein we stated that, "[f]rom a public policy perspective, the 'reasonable belief' standard is the only acceptable interpretation of the [whistleblower] statute. R.C. 4113.52 was designed to give whistleblowers some protection in Ohio's employment-at-will environment. * * * The public, in turn, relies on whistleblowers for protection. The 'actual violation' standard could delay a whistleblower's reporting of a violation which endangers the public safety, or at worst, prevent him from reporting the violation at all. The statute expects a whistleblower to be vigilant, attuned to the public's safety, loyal to his employer, and sometimes even brave -- *it does not require him to be infallible*." (Emphasis added.) *Id.* at 538-539, 668 N.E.2d at 902.

{¶ 25} Obviously, the proper place for appellees to have raised their arguments concerning the viability of appellant's claim for whistleblower protection under R.C. 4113.52(A)(2) was in their motion for summary judgment at the trial court level. This appellees failed to do. Accordingly, we will not address the merits of appellees' contentions that appellant is not a protected whistleblower under the provisions of R.C. 4113.52(A)(2). These arguments may be raised before the trial court on remand.

{¶ 26} In conclusion, we find that the grant of summary judgment in favor of appellees on appellant's statutory cause of action for violations of the Whistleblower Statute was appropriate to the extent that appellant claimed protection as a whistleblower under R.C. 4113.52(A)(1)(a). However, we find that the trial court erred in granting summary judgment in favor of appellees on appellant's claim for protection under R.C. 4113.52(A)(2). Accordingly, we reject appellant's first proposition of law, but find his third proposition of law to be well taken. We vacate that portion of the trial court's judgment which dismissed appellant's claims for protection under R.C. 4113.52(A)(2), reinstate appellant's statutory claim that he was unlawfully retaliated against by appellees for having

filed an authorized report under R.C. 4113.52(A)(2), and remand this cause to the trial court for further proceedings on the statutory cause of action.

II

*Greeley* Claim

**{¶ 27}** In his second proposition of law, appellant contends that he also has an independent common-law cause of action based upon *Greeley*, *supra*, 49 Ohio St.3d 228, 551 N.E.2d 981, for wrongful discharge in violation of public policy. Appellant suggests that he is entitled to maintain his *Greeley* claim either in addition to or in lieu of his statutory cause of action. We agree with appellant's contentions in this regard. Accordingly, for the reasons that follow, we reverse that portion of the court of appeals' judgment which affirmed the grant of summary judgment against appellant on the claim of wrongful discharge in violation of public policy.[4]

**{¶ 28}** In *Greeley*, 49 Ohio St.3d 228, 551 N.E.2d 981, Robert Greeley, an at-will employee, was allegedly discharged from his employment solely because his employer had received a court order requiring the withholding of a specific amount of Greeley's wages for child support. Greeley sued his former employer for wrongful discharge, since R.C. 3113.213(D) prohibits employers from using a child support wage withholding order as a basis for discharging an employee. R.C. 3113.213(D) sets forth a monetary fine for employers who violate the statute but does not provide for a private cause of action on behalf of the aggrieved employee. In *Greeley*, we recognized a public-policy exception to the employment-at-will doctrine and held that Greeley was entitled to maintain a cause of action in tort

---

4. The court of appeals apparently assumed (and the parties to this appeal apparently agree) that the trial court granted *summary judgment* in favor of appellees on appellant's claim of wrongful discharge in violation of public policy. We accept this assumption for purposes of this appeal. However, we note, in passing, that appellees moved for judgment on the pleadings (Civ.R. 12[C]) with respect to appellant's claim of wrongful discharge in violation of public policy -- not for summary judgment under Civ.R. 56.

against his former employer for wrongful discharge. *Id*. at 233-235, 551 N.E.2d at 986-987. Specifically, in *Greeley*, at paragraphs one, two and three of the syllabus, we held that:

"1. Public policy warrants an exception to the employment-at-will doctrine when an employee is discharged or disciplined for a reason which is prohibited by statute. (R.C. 3113.213[D], construed and applied.)

"2. Henceforth, the right of employers to terminate employment at will for 'any cause' no longer includes the discharge of an employee where the discharge is in violation of a statute and thereby contravenes public policy. (*Fawcett v. G.C. Murphy & Co.* [1976], 46 Ohio St.2d 245, 75 O.O.2d 291, 348 N.E.2d 144, modified.)

"3. In Ohio, a cause of action for wrongful discharge in violation of public policy may be brought in tort."

{¶ 29} Additionally, in *Greeley,* we recognized that the public-policy exception to the employment-at-will doctrine need not be premised solely upon a violation of a specific statute. We said that: "Today, we only decide the question of a public policy exception to the employment-at-will doctrine based on violation of a specific statute. *This is not to say that there may not be other public policy exceptions to the doctrine but, of course, such exceptions would be required to be of equally serious import as the violation of a statute*." (Emphasis added.) *Id.*, 49 Ohio St.3d at 234-235, 551 N.E.2d at 987.

{¶ 30} In *Tulloh v. Goodyear Atomic Corp*. (1992), 62 Ohio St.3d 541, 584 N.E.2d 729, syllabus, this court held that "[a]bsent statutory authority, there is no common-law basis in tort for a wrongful discharge claim." The syllabus in *Tulloh* was supported by a majority composed of two justices and two visiting judges.

{¶ 31} However, in *Painter v. Graley* (1994), 70 Ohio St.3d 377, 639 N.E.2d 51, paragraphs two and three of the syllabus, we held that:

"2. To state a claim of wrongful discharge in violation of public policy, a

plaintiff must allege facts demonstrating that the employer's act of discharging him contravened a 'clear public policy.' (*Greeley v. Miami Valley Maintenance Contractors, Inc.* [1990], 49 Ohio St.3d 228, 551 N.E.2d 981, affirmed and followed.)

"3. *'Clear public policy' sufficient to justify an exception to the employment-at-will doctrine is not limited to public policy expressed by the General Assembly in the form of statutory enactments, but may also be discerned as a matter of law based on other sources, such as the Constitutions of Ohio and the United States, administrative rules and regulations, and the common law.* (*Tulloh v. Goodyear Atomic Corp.* [1992], 62 Ohio St.3d 541, 584 N.E.2d 729, overruled.)" (Emphasis added.)

**{¶ 32}** Therefore, *Greeley* and *Painter* recognize an exception to the employment-at-will doctrine when an at-will employee is discharged or disciplined for a reason that contravenes clear public policy. There is no question that *Greeley* and *Painter* recognize that clear public policy may be ascertained from a statutory provision or from any number of other sources. If there was ever any serious question whether a specific statute had to be violated for *Greeley* to apply, *Painter* answered that question in the negative by expressly overruling *Tulloh*, *supra*. See *Painter*, paragraph three of the syllabus. The question whether the *Greeley* public-policy exception to the employment-at-will doctrine applies only in cases involving a statutory violation was soundly rejected not only in *Painter,* but in the recent case of *Collins v. Rizkana* (1995), 73 Ohio St.3d 65, 652 N.E.2d 653.

**{¶ 33}** In determining whether appellant has a viable common-law cause of action under *Greeley* and its progeny for tortious wrongful discharge in violation of public policy, we reaffirm the following suggested analysis set forth in *Painter*, *supra*, 70 Ohio St.3d at 384, 639 N.E.2d at 57, fn. 8:

"In reviewing future cases, Ohio courts may find useful the analysis of Villanova Law Professor H. Perritt, who, based on review of cases throughout the

23

country, has described the elements of the tort as follows:

"'1.  That [a] clear public policy existed and was manifested in a state or federal constitution, statute or administrative regulation, or in the common law (the *clarity* element).

"'2.  That dismissing employees under circumstances like those involved in the plaintiff's dismissal would jeopardize the public policy (the *jeopardy* element).

"'3.  The plaintiff's dismissal was motivated by conduct related to the public policy (the *causation* element).

"'4.  The employer lacked overriding legitimate business justification for the dismissal (the *overriding justification* element).'  (Emphasis *sic*.)

"H. Perritt, The Future of Wrongful Dismissal Claims:  Where Does Employer Self Interest Lie? (1989), 58 U.Cin.L.Rev. 397, 398-399."

{¶ 34} We recently applied this same analysis in *Collins*, *supra*, 73 Ohio St.3d at 69-74, 652 N.E.2d at 657-660, in determining that, in Ohio, a cause of action may be brought for the tort of wrongful discharge in violation of public policy based on sexual harassment/discrimination in the workplace.  In *Collins*, we noted that the clarity and jeopardy elements of the tort of wrongful discharge are questions of law to be determined by the court.  *Id*. at 70, 652 N.E.2d at 658.  Conversely, the causation and overriding justification elements are questions of fact for the trier-of-fact.  *Id*.  Thus, given the procedural disposition of the case at bar, we consider only the clarity and jeopardy elements of the tort of wrongful discharge.

{¶ 35} Turning to the clarity element, we are easily able to identify at least two main sources of public policy prohibiting the alleged retaliatory discharge of appellant based on his report to OSHA.  For the reasons that follow, we find that each of these two sources of public policy is independently sufficient to justify an exception to the employment-at-will doctrine and to warrant recognition of a cause of action for wrongful discharge in violation of public policy.

**{¶ 36}** The first main source of expressed public policy can be found in Section 660(c), Title 29, U.S.Code, which specifically prohibits employers from retaliating against employees (like appellant) who file OSHA complaints. Section 660(c) does not provide an employee with a private right of action against the employer. Section 660(c)(1), Title 29, U.S.Code provides: "No person shall discharge or in any manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter [the federal Occupational Safety and Health Act, Section 651 *et seq.*, Title 29, U.S.Code] * * * or because of the exercise by such employee on behalf of himself or others of any right afforded by this chapter." As explained in our discussion *infra*, this federal statute constitutes a sufficiently clear expression of public policy to warrant an exception to the doctrine of employment at will, since the federal statute is consistent with Ohio's public policy favoring workplace safety.

**{¶ 37}** Appellees suggest, however, that *federal* statutes cannot be used to determine whether there is a sufficiently clear public policy to justify an exception to the employment-at-will doctrine. In this regard, appellees point to paragraph three of the syllabus in *Painter*, 70 Ohio St.3d 377, 639 N.E.2d 51, which does not include any reference to federal statutes as providing a basis for a *Greeley* claim. However, the analysis of the "clarity element" we employ in the case at bar is the one specifically suggested in *Painter, supra,* at 384, 639 N.E.2d at 57, fn. 8. That analysis mandates consideration of the question whether clear public policy is manifested in a *state or federal* constitution, *statute* or administrative regulation, or in the common law. *Id.* See, also, *Collins*, 73 Ohio St.3d at 69-70, 652 N.E.2d at 657-658, wherein we adopted the suggested analysis set forth in footnote eight of the *Painter* decision, including the suggested analysis of the clarity element of the tort of wrongful discharge. Furthermore, in *Mers v. Dispatch Printing Co.* (1985), 19 Ohio St.3d 100, 103, 19 OBR 261, 263, 483 N.E.2d 150, 153, we recognized

that the employment-at-will doctrine in Ohio is not "without any defined limits." In *Mers*, we specifically cited Section 660(c), Title 29, U.S.Code as one example of the type of laws forbidding retaliatory discharge. *Id*. at 103, 19 OBR at 263-264, 483 N.E.2d at 153, fn. 2.

{¶ 38} Courts in other jurisdictions have also determined that the public policy embodied in the federal Occupational Safety and Health Act, Section 651 *et seq*., Title 29, U.S.Code, may serve as a basis for recognition of a common-law cause of action for wrongful discharge in violation of public policy. See, *e.g*., *Cloutier v. Great Atlantic & Pacific Tea Co., Inc*. (1981), 121 N.H. 915, 436 A.2d 1140, and *Sorge v. Wright's Knitwear Corp*. (E.D.Pa.1993), 832 F.Supp. 118. In this regard, we are particularly persuaded by the case of *Cerracchio v. Alden Leeds, Inc*. (1988), 223 N.J. Super. 435, 538 A.2d 1292 (holding that at-will employee discharged for filing OSHA complaint could maintain tort action for wrongful discharge in violation of New Jersey's public policy favoring workplace safety).

{¶ 39} Ohio's public policy is clearly in keeping with the laudable objectives of the federal Occupational Safety and Health Act. The public policy of this state demands that employees be provided with a safe work environment and that unsafe working conditions be corrected. This conclusion is supported by a host of statutes and constitutional provisions favoring safety in the workplace. See, *e.g*., Sections 34 and 35, Article II of the Ohio Constitution; R.C. 4101.11 (duty of employer to protect employees and frequenters); R.C. 4101.12 (duty of employer to furnish safe place of employment); R.C. 4121.13 (safety and investigative duties of the Administrator of Workers' Compensation); R.C. 4121.17 (duty of the Bureau of Workers' Compensation to investigate petitions concerning unsafe employment or places of employment); R.C. 4121.47 (no employer shall violate a specific safety rule adopted by the Administrator of Workers' Compensation or an Act of the General Assembly to protect the lives, health and safety of employees); and R.C. 4121.48 (occupational safety loan program to reduce employment hazards and

promote health, and safety of employees). Retaliation against employees who file OSHA complaints concerning unsafe or unhealthy conditions in the workplace is an absolute affront to Ohio's public policy favoring workplace safety. Such retaliation clearly contravenes the public policy of this state.

{¶ 40} The second main source of expressed public policy prohibiting appellant's alleged retaliatory discharge is R.C. 4113.52, which embodies a clear public policy favoring whistleblowing. However, the public policy embodied in the Whistleblower Statute is limited. By imposing strict and detailed requirements on certain whistleblowers and restricting the statute's applicability to a narrow set of circumstances, the legislature clearly intended to encourage whistleblowing *only to the extent that the employee complies with the dictates of R.C. 4113.52*. As we held in *Contreras*, *supra*, 73 Ohio St.3d 244, 652 N.E.2d 940, syllabus: "In order for an employee to be afforded protection as a 'whistleblower,' such employee must strictly comply with the dictates of R.C. 4113.52. Failure to do so prevents the employee from claiming the protections embodied in the statute."

{¶ 41} In *Contreras*, the plaintiff-appellant, Phillip Contreras, was allegedly discharged from his employment for whistleblowing. Contreras sued his former employer for alleged violations of the Whistleblower Statute and for wrongful discharge in violation of public policy. In *Contreras*, we found that because Contreras had not complied with the specific reporting requirements of R.C. 4113.52, he could not avail himself of the protections of the Whistleblower Statute. *Id.*, 73 Ohio St.3d at 249, 652 N.E.2d at 944. Further, we found that the question whether Contreras was entitled to maintain a cause of action for the tort of wrongful discharge was moot, stating: "If appellant was entitled to maintain a *Greeley* claim, an issue that today we do not decide, then that claim would have to be based upon the public policy embodied in R.C. 4113.52. Since appellant did not comply with the statute in the first instance he would have no foundation for a *Greeley* claim if, in fact, he was entitled to assert such a claim. Therefore, in this

case the issue is moot." *Id*. at 251, 652 N.E.2d at 946. The obvious implication of *Contreras* is that an employee who fails to strictly comply with the requirements of R.C. 4113.52 cannot base a *Greeley* claim solely upon the public policy embodied in that statute.

{¶ 42} Here, appellant claims to have been wrongfully discharged for having reported his employer to OSHA for what he apparently believed were criminal violations of the Occupational Safety and Health Act and R.C. Chapters 3704 and 3734. In our discussion in Part I, *supra*, we determined that appellant did not strictly comply with the requirements of R.C. 4113.52(A)(1)(a) in reporting his employer to OSHA. Therefore, it is clear that appellant has no foundation for a *Greeley* claim based on the public policy embodied in R.C. 4113.52 protecting employees who report matters in accordance with R.C. 4113.52*(A)(1)(a)*. However, in our discussion in Part I, *supra*, we determined that the trial court erred in dismissing appellant's claim for whistleblower protection under R.C. 4113.52*(A)(2)*. Therefore, assuming that appellant complied with the reporting requirements of R.C. 4113.52(A)(2) and that appellees retaliated against him in a manner contrary to the terms of the Whistleblower Statute, appellant has stated a second and independent foundation for a *Greeley* claim premised upon the clear public policy embodied in R.C. 4113.52.

{¶ 43} *Contreras, supra,* 73 Ohio St.3d 244, 652 N.E.2d 940, is readily distinguishable from the case at bar. The plaintiff-employee in *Contreras* had no viable statutory cause of action for protection under the Whistleblower Statute but asserted a *Greeley* claim based solely on the public policy embodied in R.C. 4113.52. However, the public policy embodied in R.C. 4113.52 could not have supported that claim, since the employee had failed in the first instance to comply with the dictates of the statute. In the case at bar, appellant continues to have a viable claim for whistleblower protection, since he arguably complied with R.C. 4113.52(A)(2) in reporting matters to OSHA. Thus, to the extent that he complied

with R.C. 4113.52, appellant has established a firm foundation for a *Greeley* claim for wrongful discharge in violation of the public policy embodied in the Whistleblower Statute.  Additionally, and in any event, appellant's *Greeley* claim is fully and independently supported by the first source of public policy identified in our discussion, *supra* -- the clear public policy of this state encouraging safety in the workplace and forbidding retaliation against those who file OSHA complaints aimed at correcting unsafe and unhealthy working conditions.

{¶ 44} Having identified two separate and independent sources of clear public policy justifying an exception to the employment-at-will doctrine, we must now consider whether dismissing employees under circumstances like those involved in this case would jeopardize the public policy (the jeopardy element).

{¶ 45} With respect to the first identified source of public policy, there is no question that Ohio's policy favoring workplace safety would be seriously compromised (jeopardized) if employers were allowed to fire employees for reporting matters to OSHA.  Obviously, such retaliatory practices could deter employees from reporting what they believe to be legitimate health and safety concerns.  Here, appellant complained to OSHA concerning the health and safety of his work environment.  He claims to have done so based upon a good faith belief that the complaint was valid.  According to appellant, he was retaliated against and ultimately discharged for having filed his complaint with OSHA.  Under these circumstances, we find that the jeopardy element of the tort of wrongful discharge has clearly been satisfied.

{¶ 46} The jeopardy analysis relating to the second identified source of clear public policy, R.C. 4113.52, is a bit more difficult.  This is so because R.C. 4113.52 contains certain civil remedies for qualifying whistleblowers.  However, the civil remedies set forth in R.C. 4113.52 are not adequate to fully compensate an aggrieved employee who is discharged, disciplined, or otherwise retaliated against in violation of the statute.  In this regard, recognizing the right of an aggrieved

employee who is retaliated against in violation of R.C. 4113.52 to maintain a *Greeley*-based common-law cause of action for violation of the public policy embodied in that statute would serve to encourage the legislative objectives of R.C. 4113.52 and complement the limited remedies available under the Whistleblower Statute.

**{¶ 47}** Appellees suggest, however, that *Greeley, supra,* 49 Ohio St.3d 228, 551 N.E.2d 981, applies only in cases where an employee is discharged or disciplined for a reason prohibited by a statute that provides the employee no specific remedy. We reject such a narrow interpretation of *Greeley*. The syllabus in *Greeley* does *not* say that. *Greeley* and its progeny stand for the proposition that, in Ohio, the judicially recognized doctrine of employment at will has certain limitations. One of those limitations is that the doctrine will not be followed in cases where an at-will employee is discharged or disciplined for a reason that violates a statute and thereby contravenes public policy. *Greeley*, *supra*, paragraphs one and two of the syllabus. The syllabus in *Greeley* makes no exception for statutes like R.C. 4113.52 that contain remedial provisions. That, of course, was no mistake. The *Greeley* public-policy exception to the doctrine of employment at will was not intended to apply only where a statute provides no civil remedies. Rather, *Greeley* and its progeny are intended to bolster the public-policy of this state and to advance the rights of employees who are discharged or disciplined in contravention of clear public policy. Accord *Amos v. Oakdale Knitting Co.* (1992), 331 N.C. 348, 356, 416 S.E.2d 166, 171 (holding that a public policy exception to the employment-at-will doctrine adopted by the North Carolina Supreme Court in *Coman v. Thomas Mfg. Co.* [1989], 325 N.C. 172, 381 S.E.2d 445, was "not just a remedial gap-filler. It is a judicially recognized outer limit to a judicially created doctrine, designed to vindicate the rights of employees fired for reasons offensive to the public policy of [North Carolina]. The existence of other remedies, therefore, does not render the public policy exception moot."). We are

not now prepared nor have we ever been inclined to limit *Greeley* to the extent urged by appellees.

{¶ 48} Additionally, recognizing the right of an at-will employee who is discharged or disciplined in violation of R.C. 4113.52 to maintain a *Greeley* claim, a statutory whistleblower claim, or both, would foster (not hinder) the public policy of this state to protect whistleblowers from unlawful retaliatory measures. Therefore, the mere existence of statutory remedies in R.C. 4113.52 does not, without more, operate to bar recognition of appellant's *Greeley* claim for tortious wrongful discharge in violation of R.C. 4113.52. This conclusion is supported by a number of our prior cases, including *Helmick v. Cincinnati Word Processing, Inc.* (1989), 45 Ohio St.3d 131, 543 N.E.2d 1212; *Kerans v. Porter Paint Co.* (1991), 61 Ohio St.3d 486, 575 N.E.2d 428; and *Collins*, *supra*, 73 Ohio St.3d 65, 652 N.E.2d 653.

{¶ 49} In *Helmick*, at 133-135, 543 N.E.2d at 1215-1216, this court determined that the provisions of R.C. Chapter 4112 prohibiting employment discrimination based on sex did not preempt common-law intentional tort claims arising out of acts of sexual discrimination in the workplace. We reached this conclusion even though the statutory scheme provided specific remedies for the victims of the sex discrimination. We noted that the relief available under the statutory scheme did not parallel the damages available in a common-law tort action. *Id*. We held that "[a]llowing a plaintiff to pursue common-law remedies in lieu of the relief provided under R.C. Chapter 4112 creates no conflict and serves to supplement the limited protection and coverage of that chapter." *Id*. at paragraph two of the syllabus.

{¶ 50} Similarly, in *Kerans*, *supra*, 61 Ohio St.3d 486, 575 N.E.2d 428, paragraph one of the syllabus, we held that "[t]he workers' compensation statute does not provide the exclusive remedy for claims based upon sexual harassment in the workplace." We reached this conclusion, since the relief available under the

statute would be insufficient to remedy the damages actually suffered by the victim. *Id*. at 489, 575 N.E.2d at 431.

{¶ 51} Recently, in *Collins*, *supra*, 73 Ohio St.3d 65, 652 N.E.2d 653, we recognized the right of an employee to maintain a *Greeley* claim based upon sexual harassment/discrimination in the workplace. We did so despite the fact that the employee in *Collins* was discriminated against in violation of the public policy embodied in R.C. Chapter 4112, which sets forth specific remedies for victims of sexual harassment/discrimination in the workplace. We note, however, that the employee in *Collins* was unable to avail herself of the remedies set forth in R.C. Chapter 4112 because her employer never employed four or more people and, thus, did not come within the scope of R.C. Chapter 4112. *Id*. at 74, 652 N.E.2d at 660.

{¶ 52} It is clear from the reasoning of *Helmick, Kerans*, and perhaps even *Collins*, *supra*, that R.C. 4113.52 does not provide the exclusive remedy for at-will employees who are discharged or disciplined for a reason prohibited by the public policy embodied in that statute. The remedies available pursuant to R.C. 4113.52 are not sufficient to provide the complete relief that would otherwise be available in a *Greeley*-based cause of action for the tort of wrongful discharge. The statute does not provide for certain compensatory damages and does not specifically authorize recovery of punitive damages. Most important, the statute permits the court to fashion an award based upon whatever the court deems to be appropriate. See R.C. 4113.52(E). Clearly, the relief available to a whistleblower under a statutory cause of action comes nowhere near the complete relief available in an action based upon the *Greeley* public-policy exception to the doctrine of employment at will. In our judgment, the relief available in an action for the tort of wrongful discharge merely complements the limited statutory relief available pursuant to R.C. 4113.52. Thus, we find that the mere existence of statutory remedies for violations of R.C. 4113.52 does not operate as a bar to alternative

common-law remedies for wrongful discharge in violation of the public policy embodied in the Whistleblower Statute.

{¶ 53} Appellees note, however, that there was no cause of action in Ohio for an employee who was discharged or disciplined for whistleblowing prior to the enactment of R.C. 4113.52. Indeed, in 1986, in *Phung v. Waste Mgt., Inc.* (1986), 23 Ohio St.3d 100, 23 OBR 260, 491 N.E.2d 1114, paragraphs one and two of the syllabus, a majority (5-2) of this court held that public policy does not require an exception to the employment-at-will doctrine when an employee is discharged for reporting to his employer that it is conducting its business in violation of law, and that an at-will employee who is discharged for reporting such matters has no common-law cause of action for wrongful discharge. In 1988, the General Assembly enacted the first version of Ohio's Whistleblower Statute (142 Ohio Laws, Part II, 3590-3593) in apparent response to *Phung*. In enacting the current and former versions of R.C. 4113.52 (which are virtually identical), the General Assembly set forth the procedure a whistleblower must follow to gain statutory protection and also set forth limited statutory remedies for violations of the statute. The history of former R.C. 4113.52 reveals that the General Assembly had considered making a broader range of civil remedies available to qualified whistleblowers, but rejected that notion in favor of the more limited list of remedies set forth in both the current and former versions of R.C. 4113.52(E). See, generally, *Trader v. People Working Cooperatively, Inc.* (1996), 74 Ohio St.3d 1286, 1286-1289, 660 N.E.2d 737, 737-739 (Wright, J., dissenting) (discussing the legislative history of R.C. 4113.52).[5] Appellees urge that this history of R.C. 4113.52 and the

---

5. It should be noted that the history of former R.C. 4113.52 discussed in the dissent in *Trader v. People Working Cooperatively, Inc.* (1996), 74 Ohio St.3d 1286, 1286-1289, 660 N.E.2d 737, 737-739 (Wright, J., dissenting), appears to be inaccurate. The *Trader* dissent relied on *Rheinecker v. Forest Laboratories* (S.D.Ohio 1993), 826 F.Supp. 256, 258, fn. 2, as providing an accurate account of the legislative proceedings on Sub.H.B. No. 406. But the *Trader* dissent failed to recognize that statements made in footnote 2 of *Rheinecker*, *supra*, were apparently inaccurate and were subsequently modified by corrective order in *Rheinecker v. Forest Laboratories, Inc.* (S.D.Ohio

fact that the statute setS forth a "new" right of action and a list of available remedies clearly demonstrate that it was the express will of the General Assembly in enacting R.C. 4113.52 to set forth the exclusive remedies for whistleblowers and to preempt any possible common-law remedies for retaliatory discharges based on whistleblowing. Again, we disagree.

**{¶ 54}** As indicated immediately above, the legislative history of R.C. 4113.52 clearly reveals that the General Assembly considered and rejected the notion of providing a wider range of statutory civil remedies for qualifying whistleblowers who are discharged or disciplined in violation of the statute. However, this fact alone does not answer the question whether the remedies set forth in R.C. 4113.52 are intended to be exclusive. Nor is the fact that the legislature enacted R.C. 4113.52 in apparent response to *Phung* a persuasive reason to hold that the statute preempts the formation or recognition of an independent cause of action in tort under *Greeley* and its progeny for wrongful discharge in violation of public policy. Indeed, we find nothing in R.C. 4113.52 or its history that compels the conclusion that it was the express will of the General Assembly that any and all causes of action premised on whistleblowing must be commenced and remedied exclusively under R.C. 4113.52. Rather, on the basis of the information available, it is much more reasonable to conclude that the General Assembly enacted R.C. 4113.52 to remedy the defect in the law caused by this court's decision in *Phung,* but never intended to preclude the future development of the common law of this state in the area of "whistleblowing."

**{¶ 55}** Furthermore, if the General Assembly had truly intended to make R.C. 4113.52 the sole and exclusive remedy for whistleblowers, it certainly knew

---

1994), 855 F.Supp. 913. However, a review of the materials submitted in the case at bar concerning the history of former R.C. 4113.52 clearly reveals that the General Assembly did, in fact, consider making a broader range of remedies available to qualifying whistleblowers, but later rejected that notion in favor of the more limited remedies set forth in the current and former versions of R.C. 4113.52(E).

how to do so. R.C. 4113.52 was presumably patterned after R.C. 124.341, Ohio's whistleblower protection statute pertaining to state employees. R.C. 124.341 was specifically considered by the General Assembly when it enacted R.C. 4113.52. This is convincingly demonstrated by the fact that R.C. 4113.52(D) specifically refers to R.C. 124.341. Additionally, the two statutes are similar in many respects. However, R.C. 124.341(D), unlike any provision of R.C. 4113.52, expressly states that the remedy set forth in the statute is the "sole and exclusive remedy" available for a qualifying whistleblower. R.C. 124.341(D) provides: "If an appointing authority takes any disciplinary or retaliatory action against a classified or unclassified employee as a result of the employee's having filed a report under division (A) of this section, *the employee's sole and exclusive remedy, notwithstanding any other provision of law*, is to file an appeal with the state personnel board of review * * *." (Emphasis added.) The absence of such language in R.C. 4113.52 can hardly be characterized as a mistake or oversight. Therefore, we presume that it was not the intent of the General Assembly in enacting R.C. 4113.52 to set forth the sole and exclusive remedies for whistleblowers or to preempt alternative common-law remedies for retaliatory discharges based on whistleblowing.

{¶ 56} There are a number of Ohio appellate and federal district court cases which have held that it was the express will of the General Assembly in enacting R.C. 4113.52 to set forth the exclusive remedies for whistleblowers and that R.C. 4113.52 preempts any possible common-law remedies for retaliatory discharges based on whistleblowing. See, *e.g.*, *Bear v. Geetronics, Inc.* (1992), 83 Ohio App.3d 163, 168-169, 614 N.E.2d 803, 807; *Murray v. Clinton Petroleum Co.* (July 16, 1993), Portage App. No. 92-P-0086, unreported; 1993 WL 268459, *Rayel v. Wackenhut Corp.* (June 8, 1995), Cuyahoga App. No. 67459, unreported; *Ungrady v. Burns Internatl. Sec. Serv., Inc.* (N.D.Ohio 1991), 767 F.Supp. 849, 852-853; and *Rheinecker v. Forest Laboratories, Inc.* (S.D.Ohio 1993), 813 F.Supp. 1307, 1312-

1314, reconsideration denied (1993), 826 F.Supp. 256. A synopsis of the view that R.C. 4113.52 represents the sole and exclusive remedy for whistleblowers—a view adopted by the trial court and court of appeals in the case at bar—was set forth in a dissenting opinion to this court's order dismissing the case of *Trader*, *supra,* 74 Ohio St.3d 1286, 1286-1289, 660 N.E.2d 737, 737-739 (Wright, J., dissenting). However, the views expressed in the *Trader* dissent and the rationale supporting those views are wholly inconsistent with the conclusions we reach here today that R.C. 4113.52 has no preclusive effect on appellant's *Greeley* claim for tortious wrongful discharge in violation of public policy. In our discussion, *supra*, we have generally addressed and rejected many of the major points made in the *Trader* dissent, but there remains one particular aspect of that dissent we feel compelled to address specifically.

{¶ 57} In his dissent in *Trader*, Justice Wright (now retired from the bench) was joined by two current members of this court in stating that "[w]here a statute such as [R.C. 4113.52] creates a right that was not actionable at common law, the remedy prescribed is exclusive." *Id*. at 1287, 660 N.E.2d at 737. To support this proposition, the dissent in *Trader* cited *Franklin Cty. Law Enforcement Assn. v. Fraternal Order of Police* (1991), 59 Ohio St.3d 167, 169, 572 N.E.2d 87, 89, wherein this court quoted *Zanesville v. Fannan* (1895), 53 Ohio St. 605, 42 N.E. 703, paragraph two of the syllabus. *Trader* at 1287, 660 N.E.2d at 737. In *Zanesville*, paragraph two of the syllabus, this court held: "Where a statute which creates a new right, prescribes the remedy for its violation, the remedy is exclusive; but when a new remedy is given by statute for a right of action existing independent of it, without excluding other remedies already known to the law, the statutory remedy is cumulative merely, and the party may pursue either at his option." The principle of law set forth in *Zanesville* that where a statute creates a new right and prescribes the remedy for its violation, the remedy is exclusive, was derived from the case of *Dunn v. Kanmacher* (1875), 26 Ohio St. 497. See *Zanesville*, *supra*, 53

36

Ohio St. at 620, 42 N.E. at 706. In *Dunn*, *supra*, 26 Ohio St. at 504, the true principle of law is established that "where a statute gives a new right, and also prescribes the remedy for its violation, the remedy so prescribed must be taken as exclusive, *unless it appears from the statute that the legislature intended otherwise*." (Emphasis added.) Therefore, the intent of the legislature is the determining factor whether the remedies prescribed by R.C. 4113.52 are exclusive. As we stated in our discussion, *supra*, the history and language of R.C. 4113.52 move us to conclude that the General Assembly did not intend for the remedies prescribed by R.C. 4113.52 to be exclusive.

{¶ 58} In his dissent in *Trader*, 74 Ohio St.3d at 1287, 660 N.E.2d at 737-738, Justice Wright also attempted to support the above statement that "[w]here a statute such as [R.C. 4113.52] creates a right that was not actionable at common law, the remedy prescribed is exclusive," by citing yet another passage from *Franklin Cty. Law Enforcement Assn., supra,* 59 Ohio St.3d at 169, 572 N.E.2d at 89-90, wherein we cited the following passages in *Fletcher v. Coney Island, Inc*. (1956), 165 Ohio St. 150, 154-155, 59 O.O. 212, 214, 134 N.E.2d 371, 374-375:

"Where the General Assembly by statute creates a new right and at the same time prescribes remedies or penalties for its violation, the courts may not intervene and create an additional remedy. * * *

"If the General Assembly has provided a remedy for the enforcement of a specific new right, a court may not on its own initiative apply another remedy it deems appropriate."

{¶ 59} However, *Fletcher*, *supra*, involved a situation wherein this court held, and the parties to the litigation apparently agreed, that there would have been absolutely no cause of action or remedy for the conduct at issue in *Fletcher* (exclusion of an African-American from an amusement park) in the absence of legislation, and that any right of action by the plaintiff was exclusively within the province of the legislature. *Id*. at 153-154, 59 O.O. at 213-214, 134 N.E.2d at 373-

374. Such is clearly not the case in the area of employment at will. See discussion *infra*. Moreover, unlike R.C. 4113.52, the statutes at issue in *Fletcher* (former R.C. 2901.35 and 2901.36) contained at least some language indicating a legislative intent to bar any further action above and beyond the remedies provided by statute. *Id*. at 153-154, 59 O.O. at 213-214, 134 N.E.2d at 373-374. Indeed, in *Fletcher*, at paragraph two of the syllabus, this court expressly held that the language of the statutes at issue in that case demonstrated "a plain purpose and intent on the part of the General Assembly to restrict the remedies or penalties available to those expressly provided."

{¶ 60} It is also interesting to note that in *Rheinecker, supra,* 826 F.Supp. 256, 257, the federal district court relied on the case of *Commrs. v. Bank of Findley* (1877), 32 Ohio St. 194, in a manner similar to the way the dissent in *Trader* indirectly relied on *Zanesville* and *Fletcher*. In *Bank of Findley,* at 200-201, this court stated: "In such case, the rule is, says Lord Mansfield, in *Rex v. Robinson*, 2 Burr. 803: 'That where a statute creates a *new offense* by prohibiting and making unlawful anything which was lawful before, and appoints a specific remedy against such new offense (not antecedently unlawful), by a particular sanction and a particular method of proceeding, *that particular method of proceeding must be pursued and none other*.'" (Emphasis *sic*.) However, in *Bank of Findley,* this court specifically noted that the remedy provided by the statute at issue in that case provided more than ample recovery for an aggrieved party and that the remedies were "*full, adequate and complete*." (Emphasis added.) *Id*., 32 Ohio St. at 200. Conversely, the remedies set forth in R.C. 4113.52 are neither ample nor complete.

{¶ 61} Finally, the right of this court to recognize a common-law cause of action and remedy for the wrongful discharge of an at-will employee cannot be seriously questioned. "After all, who presides over the common law but the courts?" *Gallimore v. Children's Hosp. Med. Ctr*. (1993), 67 Ohio St.3d 244, 253, 617 N.E.2d 1052, 1059. The employment-at-will doctrine was judicially created,

and it may be judicially abolished. Clearly, it is the responsibility of the Ohio judiciary to determine whether sufficiently clear public policy reasons exist to support a common-law exception to the doctrine of employment at will (see *Painter*, *supra*, 70 Ohio St.3d at 384, 639 N.E.2d at 56) and to set the parameters of those exceptions. Today, we recognize such an exception on the basis of *Greeley* in circumstances where an at-will employee fully complies with the dictates of R.C. 4113.52 and is discharged or disciplined in violation of the statute. In so doing, we specifically find that the common-law remedies available under *Greeley* do not conflict with the limited statutory remedies available to a qualifying whistleblower under R.C. 4113.52. In addition, we also recognize a separate exception to the employment-at-will doctrine where an employee is discharged or disciplined for reporting health and safety concerns to OSHA, and find this exception to be applicable regardless whether the employee had complied with the dictates of R.C. 4113.52 in reporting such matters to OSHA.

{¶ 62} Accordingly, we hold that an at-will employee who is discharged or disciplined for filing a complaint with OSHA concerning matters of health and safety in the workplace is entitled to maintain a common-law tort action against the employer for wrongful discharge/discipline in violation of public policy pursuant to *Greeley,* 49 Ohio St.3d 228, 551 N.E.2d 981, and its progeny. Thus, appellant is entitled to maintain a *Greeley* claim against appellees whether or not he complied with the dictates of R.C. 4113.52 in reporting his employer to OSHA. We also hold that R.C. 4113.52 does not preempt a common-law cause of action against an employer who discharges or disciplines an employee in violation of that statute. We further hold that an at-will employee who is discharged or disciplined in violation of the public policy embodied in R.C. 4113.52 may maintain a common-law cause of action against the employer pursuant to *Greeley* and its progeny so long as that employee had fully complied with the statute and was subsequently discharged or disciplined. The remedies available pursuant to R.C. 4113.52 for

violations of the statute and the remedies available for the tort of wrongful discharge are cumulative. Therefore, an at-will employee who is discharged or disciplined in violation of R.C. 4113.52 may maintain a statutory cause of action for the violation, a common-law cause of action in tort, or both, but is not entitled to double recovery. Our holdings today necessitate that we overrule *Phung*, *supra*, 23 Ohio St.3d 100, 23 OBR 260, 491 N.E.2d 1114, which held that there exists no exception to the doctrine of employment at will for employees who are discharged or disciplined for whistleblowing. *Id*. at paragraphs one and two of the syllabus. While we believe that the enactment of R.C. 4113.52 overruled *Phung*, we now do so specifically in order to avoid any confusion. *Phung* was decided before R.C. 4113.52 became the law, and before our pronouncements in *Greeley* and its progeny.

{¶ 63} For the foregoing reasons, appellant's second proposition of law is well taken. We reverse that portion of the court of appeals' judgment which affirmed the grant of summary judgment against appellant on the claim of wrongful discharge in violation of public policy.

III

Emotional Distress

{¶ 64} In his fourth proposition of law, appellant contends that the court of appeals erred in affirming the grant of summary judgment in favor of appellees on appellant's claims for negligent and intentional infliction of serious emotional distress. We disagree.

{¶ 65} With respect to appellant's claim for negligent infliction of serious emotional distress, we can perceive of no basis for such a claim on the facts of this case. As we noted in *Heiner v. Moretuzzo* (1995), 73 Ohio St.3d 80, 85-87, 652 N.E.2d 664, 668-670, recovery for negligent infliction of severe emotional distress has typically been limited to instances where the plaintiff has either witnessed or experienced a dangerous accident and/or was subjected to an actual physical peril.

As to appellant's claim for intentional infliction of emotional distress, we agree with the trial court and the court of appeals that even after viewing the evidence in a light most favorable to appellant, the record does not support a claim for intentional infliction of emotional distress under the standards set forth in *Yeager v. Local Union 20* (1983), 6 Ohio St.3d 369, 374-375, 6 OBR 421, 426, 453 N.E.2d 666, 671-672.

{¶ 66} Accordingly, we reject appellant's fourth proposition of law and affirm the judgment of the court of appeals upholding the grant of summary judgment in favor of appellees on appellant's claims for negligent and intentional infliction of serious emotional distress.

IV

Conclusion

{¶ 67} For all of the foregoing reasons, we affirm the judgment of the court of appeals in part, reverse it in part, and remand this cause to the trial court for further proceedings consistent with our opinion.

*Judgment affirmed in part,*
*reversed in part,*
*and cause remanded.*

RESNICK and F.E. SWEENEY, JJ., concur.

PFEIFER, J., concurs in syllabus and judgment only.

MOYER, C.J., COOK and LUNDBERG STRATTON, JJ., dissent in part and concur in part.

———————————

**PFEIFER, J., concurring in syllabus and judgment only.**

{¶ 68} I concur in the syllabus and judgment of the majority. I am pleased to see that a cause of action for whistleblowers has finally found its most fitting forum—the common law. See *Contreras v. Ferro Alloy Corp.* (1995), 73 Ohio St.3d 244, 251-253, 652 N.E.2d 940, 946-947 (Pfeifer, J., dissenting.). The

Whistleblower Statute, R.C. 4413.52, was enacted only after this court failed to appropriately extend common-law protection in *Phung v. Waste Mgt, Inc.* (1986), 23 Ohio St.3d 100, 23 OBR 260, 491 N.E.2d 114, a case which demonstrated that such protection was truly needed. The Whistleblower Statute was not a response to judicial action, but to judicial inaction. It was not an attempt to curb a common-law right, but to create a right where the common law had failed

{¶ 69} At the same time we formally recognize a common-law cause of action for whistleblowers, it is important to recognize the cause of action's legal corollary. The entry of this cause of action into the common law must allow for the development of a wide range of reasonable defenses that will permit an employer to tell the whole story of a termination.

———————————

**COOK, J., dissenting in part and concurring in part.**

{¶ 70} I concur only in Part III of the majority opinion. I respectfully dissent from the majority decision to expand the R.C. 4113.52 remedies beyond those established by the General Assembly because the majority fails to persuade that its result is legitimately grounded in Ohio public policy. I also dissent because the plaintiff failed to withstand the summary judgment challenge of the employer.

I

THE REMEDY PROVIDED IN R.C. 4113.52 IS EXCLUSIVE

{¶ 71} This decision by the majority is a troubling instance of this court elevating itself above the General Assembly as architect of Ohio's public policy. Rather than interpreting the Whistleblower Statute, the majority sets its own policy for the state based on the view of four justices that the statutory relief, as crafted by the branch of government charged with that decision, is not "ample [or] complete." The majority, because it disagrees with the legislative decisions to limit remedies provided in the state and federal statutes, acts beyond this court's constitutional authority to remedy the perceived shortcomings.

{¶ 72} Pursuant to *Greeley v. Miami Valley Maintenance Contrs., Inc.* (1990), 49 Ohio St.3d 228, 551 N.E.2d 981, the majority purports to base an exception to at-will employment on "public policy" extracted from state and federal statutory provisions. Recognition of a *Greeley* claim in this case, however, does not act to further the public-policy determination of Congress or the General Assembly. Instead, it circumvents the specific remedies provided in those statutes.

{¶ 73} As part of its rationale, the majority opinion takes license with the historical doctrine of employment at will. It postulates that at-will employment is a creature of common law, and therefore may be judicially *abolished*. Until today, however, the Ohio judiciary has *never* recognized a *common-law protection* against discharge for whistleblowing activity. Moreover, the Ohio Constitution gives the *legislature* primary responsibility to protect the welfare of employees. *Phung v. Waste Mgt., Inc.* (1986), 23 Ohio St.3d 100, 103, 23 OBR 260, 262, 491 N.E.2d 1114, 1117.

{¶ 74} As for the reliance on the Occupational Safety and Health Act of 1970 ("OSHA"), Section 651 *et seq.,* Title 29, U.S. Code, it is questionable, even as a general proposition, to look to a federal statute as a source of Ohio public policy. The majority justifies its creation of a *Greeley* claim based on OSHA by referring to the "clarity" element contained in the model from Professor Perritt's law review article, and employed in the lead opinion in *Painter v. Graley* (1994), 70 Ohio St.3d 377, 384, 639 N.E.2d 51, 57. Without meaningful analysis of the relevant federal statute, the majority announces that OSHA creates a clear statement of public policy favoring "workplace safety" and *Greeley* thereby permits a cause of action for retaliatory discharge grounded in common law. Such reasoning is dubious in light of the fact that although Section 660(c), Title 29, U.S. Code provides whistleblowers a remedy for retaliatory discharge, that section does not provide whistleblowers with a private cause of action. *Taylor v. Brighton Corp.* (C.A.6, 1980), 616 F.2d 256. Instead, all claims are processed through the

Secretary of Labor, who possesses broad authority to determine the investigatory and prosecutorial action to be taken. *Id.* at 261-262.[6]

**{¶ 75}** This court's creation of a *Greeley* claim based on the federal policy to promote "workplace safety" permits an employee to do in Ohio courts that which OSHA forbids in federal court -- to bring a private cause of action. The majority adopts that portion of the federal public policy supporting its determination, while ignoring the policy-driven balancing components of that legislation. As a consequence, we are left with an exception to the employment-at-will doctrine purportedly grounded on federal public policy that is more transparent than it is clear.

**{¶ 76}** The majority additionally states that "Ohio's public policy is clearly in keeping with the laudable objectives of the federal Occupational Safety and Health Act." While this may be true, the branch of government properly charged with making public-policy decisions -- the General Assembly -- has expressed Ohio's policy by enacting R.C. 4113.52. Like Section 660(c), Title 29, U.S. Code, Ohio's whistleblower statute recognizes an exception to at-will employment and sets the bounds of available relief.

**{¶ 77}** In *Contreras v. Ferro* (1995), 73 Ohio St.3d 244, 652 N.E.2d 940, syllabus, we recognized that relief under the Whistleblower Statute requires strict compliance with the reporting dictates of R.C. 4113.52. Like the reporting

---

6. The majority points to this court's opinion in *Mers v. Dispatch Printing Co.* (1985), 19 Ohio St.3d 100, 19 OBR 261, 483 N.E.2d 150, as support for its adoption of the "public policy" embodied in Section 660(c), Title 29, U.S. Code, to create a cause of action cognizable in Ohio courts. The *Mers* citation of Section 660(c), however, was included to point out that at-will employment is not without exception. *Id.* at 103, 19 OBR at 263-264, 483 N.E.2d at 153, fn.2. *Mers* was not a *Greeley*-type case authorizing relief based on the "public policy" embodied in a statute or comparable authority. Instead, *Mers* defined what inquiries were appropriate in determining whether an employment contract (implied or express) exists and recognized a cause of action for at-will employees based on promissory estoppel. Section 660(c) was cited only as a *statutory remedy* available despite at-will employment. *Mers* did not suggest that a plaintiff could recover pursuant to Section 660(c) outside the limits of the federal remedy.

requirements, the limited remedies contained in R.C. 4113.52(E) reflect the General Assembly's public policy determination. Accordingly, the majority contravenes the General Assembly's expression of public-policy by authorizing whistleblower relief beyond the statutory limits.

**{¶ 78}** The majority cites *Collins v. Rizkana* (1995), 73 Ohio St.3d 65, 70, 652 N.E.2d 653, 658, to support its determination that the "public policy" embedded in a statute may be extracted to defeat that statute's coverage provisions.[7] In *Collins*, this court recognized the right of an employee to maintain a *Greeley* claim based on policy embodied in R.C. Chapter 4112, despite the fact that Collins's employer did not meet the statutory definition of "employer." *Id.* at 74, 652 N.E.2d at 661.

**{¶ 79}** R.C. 4112.99, which provides the penalty for a violation under R.C. Chapter 4112, subjects a wrongdoer "to a civil action for damages, injunctive relief, or any other appropriate relief." Accordingly, the *Collins* court did not endorse an enlargement of statutory remedies beyond those provided in R.C. Chapter 4112. Unlike R.C. 4112.99, 4113.52(E) specifically limits the remedies available to a discharged whistleblower to reinstatement of employment, back pay, reinstatement of seniority and fringe benefits, litigation costs, attorney fees, and interest on back pay.[8]

---

7. The majority also cites *Helmick v. Cincinnati Word Processing, Inc.* (1989), 45 Ohio St.3d 131, 543 N.E.2d 1212, as being supportive of this proposition. *Helmick*, however, held that intentional torts long recognized at common law, although keyed to sexual misconduct, were not preempted by the limited remedies available at that time pursuant to R.C. 4112.05(G). *Id.* at 134-135, 543 N.E.2d at 1216. In the instant case, we are not dealing with a common-law tort independent of the statutory violation. To the contrary, the *Greeley* claim is derivative of the statutory violation.

8. The majority misreads R.C. 4113.52(E) when it states that "the statute permits the court to fashion an award based upon whatever the court deems to be appropriate." The pertinent portion of division (E) reads : "The court, in rendering a judgment for the employee in an action brought pursuant to division (D) of this section, may order, *as it determines appropriate*, *reinstatement of the employee to the same position he held at the time of the disciplinary or retaliatory action and at the same site of employment or to a comparable position at that site, the payment of back wages, full reinstatement of fringe benefits and seniority rights, or any combination of these remedies.*" (Emphasis added.)

**{¶ 80}** Moreover, the majority opinion in *Collins* carefully noted:

"We do not mean to suggest that where a statute's coverage provisions form an essential part of its public policy, we may extract a policy from the statute and use it to nullify the statute's own coverage provisions." *Id.* at 74, 652 N.E.2d at 661.

**{¶ 81}** Disregarding the *Collins* court's caveat, the decision of the majority allows a *Greeley* claim based on the public policy of R.C. 4113.52, which defeats that statute's coverage provisions. This result is achieved by recognizing a public policy to promote "workplace safety" favoring employees while ignoring the policy considerations reflected in R.C. 4113.52(E), which balances the statute by limiting the available relief. Despite the majority's assertions to the contrary, the expansion of whistleblower remedies does not come as a natural evolution of common law -- it is in derogation of the common-law employment relationship. Under *Greeley* and its progeny, such an expansion can be accomplished only when acting pursuant to "sufficiently clear public policy," such as a statute or other comparable authority. *Greeley,* 49 Ohio St.3d at 233, 551 N.E.2d at 986; *Painter,* 70 Ohio St.3d at 384, 639 N.E.2d at 56.

**{¶ 82}** Here the majority extracts an overly broad public policy from both R.C. 4113.52 and Section 660(c), Title 29, U.S. Code, while ignoring the specific remedies provided by those statutes. Such action is beyond this court's constitutional authority. See, *e.g., State v. Smorgala* (1990), 50 Ohio St.3d 222, 223, 553 N.E.2d 672, 674; *State ex rel. Bishop v. Mt. Orab Village School Dist. Bd.*

---

Upon reading *all* the pertinent statutory language, it is clear that a court may order, as appropriate, any combination of the remedies listed in that division. Division (E) does *not* authorize a court to award extrastatutory remedies that it deems appropriate.

*of Edn.* (1942), 139 Ohio St. 427, 438, 22 O.O. 494, 498, 40 N.E.2d 913, 919; *Primes v. Tyler* (1975), 43 Ohio St.2d 195, 72 O.O.2d 112, 331 N.E.2d 723.[9]

The *Trader* Dissent

**{¶ 83}** The majority impugns the dissent in *Trader v. People Working Cooperatively, Inc.* (1996), 74 Ohio St.3d 1286, 1286-1289, 660 N.E.2d 737, 737-739. I joined that dissent and I continue to support its analysis as judicious.

**{¶ 84}** In criticizing the *Trader* dissent, the majority traces the controlling language from *Franklin Cty. Law Enforcement Assn. v. Fraternal Order of Police* (1991), 59 Ohio St.3d 167, 169, 572 N.E.2d 87, 89-90, which forms the cornerstone of Justice Wright's analysis, back to its origin. In *Franklin Cty. Law Enforcement Assn.,* the majority quoted paragraph two of the syllabus in *Zanesville v. Fannan* (1895), 53 Ohio St. 605, 42 N.E. 703, which states:

"Where a statute which creates a new right, prescribes the remedy for its violation, the remedy is exclusive ***."

**{¶ 85}** As stated by the majority, the *Zanesville* court cited *Dunn v. Kanmacher* (1875), 26 Ohio St. 497, in addition to other authorities, in support of paragraph two of its syllabus. The majority declares that the "true" principle of law, as stated in *Dunn,* provides that "where a statute gives a new right, and also prescribes the remedy for its violation, the remedy so prescribed must be taken as exclusive, *unless it appears from the statute that the legislature intended otherwise.*" (Emphasis added in *Zanesville*.) However, in applying the *Dunn* standard to this case, the majority reverses the presumption of exclusivity.

---

9. It is noteworthy that the lead opinion in *Painter, supra,* echoed the following language from *Smorgala, supra,* 50 Ohio St.3d at 223, 553 N.E.2d at 674, in denying the *Greeley* claim under consideration: "Where the General Assembly has spoken, and in so speaking violated no constitutional provision, the courts of this state must not contravene the legislature's expression of public policy. 'Judicial policy preferences may not be used to override valid legislative enactments, for the General Assembly should be the final arbiter of public policy.'" *Painter,* 70 Ohio St.3d at 385, 639 N.E.2d at 57.

**{¶ 86}** The majority concludes that the General Assembly did not intend the R.C. 4113.52 remedy to be exclusive because it was not so labeled. Unlike the *Trader* dissent, the majority cites no statutory language or legislative history supporting its conclusion. It merely cites the absence of language making the limited remedies available in R.C. 4113.52 "sole and exclusive."

**{¶ 87}** The majority relies heavily on the fact that R.C. 124.341 labels its remedy as "sole and exclusive," while R.C. 4113.52 does not. R.C. 124.341 provides public employees relief similar to that contained in R.C. 4113.52, and expressly labels itself as a public employee's "sole and exclusive" remedy. R.C. 124.341(D). Little, however, can be inferred from the absence of similar language in R.C. 4113.52.

**{¶ 88}** For instance, it is possible that the General Assembly included the "sole and exclusive" language in R.C. 124.341 because that section comprehends parties subject to collective bargaining agreements, which generally provide grievance procedures as the exclusive remedy. Compare R.C. 4117.10(A) with R.C. 4113.53 (R.C. 4117.10[A] requires the General Assembly to specify when any other provision prevails over that section's general policy favoring resolution pursuant to an agreed-upon grievance procedure, while R.C. 4113.53 expressly permits private employees subject to a collective bargaining agreement to process their grievance through the channels provided in the agreement.). In any event, it is unsound to suggest that the "sole and exclusive" language was purposely excluded from R.C. 4113.52 to permit nonexistent alternative remedies. After all, the legislature enacted R.C. 4113.52 in response to this court's decision in *Phung, supra*, 23 Ohio St.3d 100, 23 OBR 260, 491 N.E.2d 1114, paragraph one of the syllabus, declaring that common law offered whistleblowers *no* protection against discharge from at-will employment.

**{¶ 89}** Having traced the exclusivity presumption, the *Trader* dissent noted that whistleblower claims were not actionable at common law and that the

enactment of R.C. 4113.52 was a legislative response to this court's holding in *Phung. Trader,* 74 Ohio St.3d at 1286-1287, 660 N.E.2d at 737. The dissent went on to present the legislative history of R.C. 4113.52, demonstrating that the General Assembly considered and rejected provisions for actual and punitive damages, *id.* at 1287, 660 N.E.2d at 738,[10] and adopted Senate amendments, enacted in R.C. 4113.52(D), requiring that whistleblower remedies be limited to those identified in the statute. *Id.* at 1287, 660 N.E.2d at 738.[11]

**{¶ 90}** By contrast, neither the appellant nor the majority in his stead has demonstrated legislative intent sufficient to overcome the presumption that R.C. 4113.52(E) is intended to provide a whistleblower with an exclusive remedy for violations of that section. Therefore, the remedy provided in R.C. 4113.52 must be taken as exclusive.

## II

## SUMMARY JUDGMENT

**{¶ 91}** I also dissent on the basis that the trial and appellate courts correctly held that Kulch failed to withstand the summary judgment challenge of Structural Fibers. I am compelled to address these issues separately, given that the majority eviscerates summary judgment in order to reach its ultimate holding that expands *Greeley* and its progeny.

---

10. Despite the majority's attempt to undermine the sound reasoning in the *Trader* dissent by pointing out that footnote 2 of *Rheinecker v. Forest Laboratories* (S.D.Ohio 1993), 826 F.Supp. 256, 258, was inaccurate and corrected in *Rheinecker v. Forest Laboratories, Inc.* (S.D.Ohio 1994), 855 F.Supp. 913, the majority concedes, as it must, that the General Assembly considered and rejected a broader range of remedies than those set forth in R.C. 4113.52(E). In fact, a review of H.B. No. 406 reveals that the bill, as introduced, would have authorized an award of actual damages, while the enacted version of that statute limits the available remedies to those listed in Division (E) of R.C. 4113.52.

11. As noted in footnote 2 to *Trader, supra,* 74 Ohio St.3d at 1287, 660 N.E.2d at 738, "The House accepted all Senate amendments to the bill. (142 Ohio House Journal 1581 [March 10, 1988].) See R.C. 4113.52(E). This amendment distinguishes the whistleblower statute from statutes such as R.C. 4112.99, which authorizes a court to award specified remedies 'or any other appropriate relief.'"

**{¶ 92}** It is of critical importance to note at the outset that without the R.C. 4113.52(A)(2) claim, this case is indistinguishable from *Contreras,* 73 Ohio St.3d 244, 652 N.E.2d 940. Knowing that the plausibility of Kulch's *Greeley* claim is entirely dependent upon the (A)(2) claim, the majority permits its survival at the expense of the continued vitality of summary judgment practice. For the reasons expressed in the dissent to *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 299-302, 662 N.E.2d 264, 278-280, I would find that Structural Fibers satisfied its burden under summary judgment when it repeatedly asserted that it was entitled to judgment as to Kulch's *entire* R.C. 4113.52 whistleblower claim. As acknowledged by Kulch in his brief to this court, Structural Fibers specifically pointed to both the R.C. 4113.52 (A)(1)(a) and the (A)(2) claims. In Kulch's brief, he admits "it is clear that a separate claim under section (A)(2) was made by plaintiff.* * * Even defendant *pointed out that fact* in its own summary judgment motion." (Emphasis added.)

**{¶ 93}** Nonetheless, the majority, relying and expanding upon the plurality opinion in *Dresher*, holds that Structural Fibers is not entitled to summary judgment on Kulch's (A)(2) claim because Structural Fibers never discharged its burden to produce evidence to disprove it. This holding is specious in light of the fact that throughout the proceedings in this case, Kulch has argued his case solely as an R.C. 4113.52(A)(1)(a) claim. For example, prior to filing its motion for summary judgment, Structural Fibers argued under Civ.R. 12(B)(6) that Count One of the complaint failed to support Kulch's claim that his employer retaliated against him "'for making any report authorized by division (A)(1) *or (2)*.'" (Emphasis added.) In response, Kulch addressed only (A)(1)(a), citing that subsection at least nine times and never once citing (A)(2).

**{¶ 94}** Moreover, oral argument before this court focused entirely on whether the reporting requirements of (A)(1)(a) had been followed and when the twenty-four-hour waiting period of (A)(1)(a) commenced, without a single reference to (A)(2) or its reporting requirements.

**{¶ 95}** Although Kulch now admits that he was on notice that Structural Fibers moved for summary judgment on his entire R.C. 4113.52 claim, Kulch never argued he could report directly to OSHA under (A)(2). If Kulch wanted to maintain his claim that (A)(2) permitted him to report directly to OSHA, he should have so argued in response to the motions to dismiss or for summary judgment rather than on appeal.

**{¶ 96}** The majority's application of *Dresher* to hold that Structural Fibers should be denied summary judgment because it failed to disprove a claim that Kulch never identified further debilitates the purposes of summary judgment. Summary judgment allows the early assessment of the merits of claims, pre-trial dismissal of meritless claims, and defining and narrowing issues for trial. However, none of these goals can be accomplished if the plaintiff need not identify its specific theory of recovery.

**{¶ 97}** As a result of the holdings in both *Dresher* and this case, to be entitled to summary judgment, defendant-movants must not only *disprove* plaintiff's case, they must also *define* plaintiff's case. In contrast, plaintiff-nonmovants have no duty to delineate their theories or to disclose the evidence to support them prior to trial. Instead, under the majority holding, it is the trial court that must identify all of plaintiff's possible claims and theories when considering summary judgment. If the lesson in *Dresher* was to object to interrogatories, the lesson here is to plead vaguely. Id., 75 Ohio St.3d at 302, 662 N.E.2d at 280 (Cook, J., dissenting). The majority errs in not requiring the same clarity and specificity of plaintiffs in their pleading and motion practice that it seeks to require of defendants.

**{¶ 98}** Kulch's failure to demonstrate that his claims under the Whistleblower statute survived because he could directly report to OSHA under (A)(2) should prove fatal not only to the (A)(2) claim, but also to his *Greeley* claim. *Contreras, supra.*

III

CONCLUSION

**{¶ 99}** In accordance with the foregoing, I would affirm the judgment of the court of appeals which affirmed summary judgment in favor of this employer on the *Greeley* claim.

MOYER, C.J., and LUNDBERG STRATTON, J., concur in the foregoing opinion.

_____