OPINION
{¶ 1} This is an appeal from a summary judgment ruling of the Coshocton County Common Pleas Court. In this case the appellant attempts to hold the individual supervisors who participated in his dismissal accountable for wrongful or retaliatory discharge.
 {¶ 2} This appeal presents two issues: first, whether R.C 4133.52, the "whistleblower" statute, creates liability for an individual supervisor for wrongful discharge in violation of public policy; second, whether an individual supervisor is subject to the Ohio common law principle that protects employees from being discharged in violation of a clear mandate of public policy.
 STATEMENT OF THE FACTS AND CASE {¶ 3} The facts alleged in this case are that Gregory M. Armstrong, an employee of Trans-Service Logistics, Inc. (Trans) discovered that a load of meat being transported by his employer was refrigerated at too high a temperature, that he reported such but that the meat was still shipped. Again, the Complaint states that he reported this to governmental authorities who inspected and caused the meat to be destroyed. According to these allegations, Mr. Armstrong was then fired.
 {¶ 4} Suit was filed under R.C. 4133.52, the "whistleblower" statute and also under a common law theory of violation of public policy.
 {¶ 5} Trans filed under bankruptcy reorganization.
 {¶ 6} Gregory Armstrong was killed, after suit was filed, and Lori Armstrong as Executor, was substituted as Plaintiff.
 {¶ 7} The individual defendants, William Waters and Harley Robertson, supervisors and officers of Trans, moved for summary judgment, which was sustained.
 {¶ 8} The Court ruled:
 {¶ 9} "The court finds the motion for partial summary judgment dismissing plaintiff's claims as to defendants William Waters and Harley Robertson to be well-taken and the motion is therefore granted. Specifically, the court finds that the "whistleblower statute" creates no individual liability under plaintiff's complaint for wrongful discharge for violation of public policy. The whistleblower statute does not provide for individual liability in such a tort action. The court therefore finds there is no genuine issue as to any material fact regarding these two individual parties and that they are entitled to judgment of dismissal as a matter of law. * * * *"
 {¶ 10} Two Assignments of Error are raised:
 ASSIGNMENTS OF ERROR {¶ 11} "I. The trial court erred as a matter of law when it determined that O.R.C. 4113.52 does not provide for individual liability.
 {¶ 12} "II. The trial court erred as a matter of law in determining that plaintiff's public policy tort did not allow for individual liability against watters [sic] and robertson."
 I. {¶ 13} In his First Assignment of Error appellant maintains that R.C 4133.52, the "whistleblower" statute creates liability for wrongful discharge not only for the "employer," i.e., the corporate entity, but also for an individual supervisor. We disagree.
 {¶ 14} R.C. 4113.52 provides:
 {¶ 15} "(A)(1)(a) If an employee becomes aware in the course of the employee's employment of a violation of any state or federal statute or any ordinance or regulation of a political subdivision that the employee's employer has authority to correct, and the employee reasonably believes that the violation either is a criminal offense that is likely to cause an imminent risk of physical harm to persons or a hazard to public health or safety or is a felony, the employee orally shall notify the employee's supervisor or other responsible officer of the employee's employer of the violation and subsequently shall file with that supervisor or officer a written report that provides sufficient detail to identify and describe the violation. If the employer does not correct the violation or make a reasonable and good faith effort to correct the violation within twenty-four hours after the oral notification or the receipt of the report, whichever is earlier, the employee may file a written report that provides sufficient detail to identify and describe the violation with the prosecuting authority of the county or municipal corporation where the violation occurred, with a peace officer, with the inspector general if the violation is within the inspector general's jurisdiction, or with any other appropriate public official or agency that has regulatory authority over the employer and the industry, trade, or business in which the employer is engaged.
 {¶ 16} "(b) If an employee makes a report under division (A)(1)(a) of this section, the employer, within twenty-four hours after the oral notification was made or the report was received or by the close of business on the next regular business day following the day on which the oral notification was made or the report was received, whichever is later, shall notify the employee, in writing, of any effort of the employer to correct the alleged violation or hazard or of the absence of the alleged violation or hazard.
 {¶ 17} "(2) If an employee becomes aware in the course of the employee's employment of a violation of chapter 3704., 3734., 6109., Or 6111. Of the revised code that is a criminal offense, the employee directly may notify, either orally or in writing, any appropriate public official or agency that has regulatory authority over the employer and the industry, trade, or business in which the employer is engaged.
 {¶ 18} "(3) If an employee becomes aware in the course of the employee's employment of a violation by a fellow employee of any state or federal statute, any ordinance or regulation of a political subdivision, or any work rule or company policy of the employee's employer and the employee reasonably believes that the violation either is a criminal offense that is likely to cause an imminent risk of physical harm to persons or a hazard to public health or safety or is a felony, the employee orally shall notify the employee's supervisor or other responsible officer of the employee's employer of the violation and subsequently shall file with that supervisor or officer a written report that provides sufficient detail to identify and describe the violation.
 {¶ 19} "(B) Except as otherwise provided in division (C) of this section, no employer shall take any disciplinary or retaliatory action against an employee for making any report authorized by division (A)(1) or (2) of this section, or as a result of the employee's having made any inquiry or taken any other action to ensure the accuracy of any information reported under either such division. No employer shall take any disciplinary or retaliatory action against an employee for making any report authorized by division (A)(3) of this section if the employee made a reasonable and good faith effort to determine the accuracy of any information so reported, or as a result of the employee's having made any inquiry or taken any other action to ensure the accuracy of any information reported under that division. For purposes of this division, disciplinary or retaliatory action by the employer includes, without limitation, doing any of the following:
 {¶ 20} "(1) Removing or suspending the employee from employment;
 {¶ 21} "(2) Withholding from the employee salary increases or employee benefits to which the employee is otherwise entitled;
 {¶ 22} "(3) Transferring or reassigning the employee;
 {¶ 23} "(4) Denying the employee a promotion that otherwise would have been received;
 {¶ 24} "(5) Reducing the employee in pay or position.
 {¶ 25} "(C) An employee shall make a reasonable and good faith effort to determine the accuracy of any information reported under division (A)(1) or (2) of this section. If the employee who makes a report under either division fails to make such an effort, the employee may be subject to disciplinary action by the employee's employer, including suspension or removal, for reporting information without a reasonable basis to do so under division (A)(1) or (2) of this section.
 {¶ 26} "(D) If an employer takes any disciplinary or retaliatory action against an employee as a result of the employee's having filed a report under division (A) of this section, the employee may bring a civil action for appropriate injunctive relief or for the remedies set forth in division (E) of this section, or both, within one hundred eighty days after the date the disciplinary or retaliatory action was taken, in a court of common pleas in accordance with the Rules of Civil Procedure. A civil action under this division is not available to an employee as a remedy for any disciplinary or retaliatory action taken by an appointing authority against the employee as a result of the employee's having filed a report under division (A) of section 124.341 of the Revised Code.
 {¶ 27} "(E) The court, in rendering a judgment for the employee in an action brought pursuant to division (D) of this section, may order, as it determines appropriate, reinstatement of the employee to the same position that the employee held at the time of the disciplinary or retaliatory action and at the same site of employment or to a comparable position at that site, the payment of back wages, full reinstatement of fringe benefits and seniority rights, or any combination of these remedies. The court also may award the prevailing party all or a portion of the costs of litigation and, if the employee who brought the action prevails in the action, may award the prevailing employee reasonable attorney's fees, witness fees, and fees for experts who testify at trial, in an amount the court determines appropriate. If the court determines that an employer deliberately has violated division (B) of this section, the court, in making an award of back pay, may include interest at the rate specified in section 1343.03 of the Revised Code.
 {¶ 28} "(F) Any report filed with the inspector general under this section shall be filed as a complaint in accordance with section 121.46
of the Revised Code."
 {¶ 29} R.C. 4113.51(B) provides:
 {¶ 30} "(B) `Employer' means any person who has one or more employees. `Employer' includes an agent of an employer, the state or any agency or instrumentality of the state, and any municipal corporation, county, township, school district, or other political subdivision or any agency or instrumentality thereof.
 {¶ 31} The issue of supervisor liability under R.C 4133.52 appears to be a question of first impression in Ohio. As the statute prohibits an "employer" from taking any disciplinary or retaliatory action against an "employee" we must first determine whether or not a "supervisor" is an "employer". There is no case law interpreting the definition of "employer" as set forth in R.C. 4113.51.
 {¶ 32} Appellant directs our attention to decisions involving whether an individual supervisor can be held liable for his or her discriminatory conduct found to be in violation of R.C. Chapter 4112, the Ohio Civil Rights Act and/or Title VII, 42 U.S.C. 2000, the federal Civil Rights Act.
 {¶ 33} In Wathen v. General Electric Co. (C.A.6, 1997), 115 F.3d 400, the United States Court of Appeals, Sixth Circuit noted "[a] majority of our sister circuits that have addressed this issue have held that an employee/supervisor, who does not otherwise qualify as an `employer,' cannot be held individually liable under Title VII and similar statutory schemes." Id. at 404. The federal Courts determined that the reasoning behind precluding individual capacity suits under Title VII applies equally to preclude such suits under R.C. Chapter 4112. "Likewise, [R.C. Chapter] 4112's definition of employer including `any person acting directly or indirectly in the interest of an employer,' instead of the term `agent' is meant only to ensure that employers cannot escape respondeat superior or agency liability. Czupih v. Card Pak, Inc.
[N.D.Ohio 1996], 916 F.Supp. 687; Gausmann v. City of Ashland [N.D.Ohio 1996], 926 F.Supp. 635. But see DeLoach v. American Red Cross [N.D.Ohio 1997, 967 F.Supp. 265] * * *; Griswold v. Fresenius USA, Inc. [N.D.Ohio 1997, 964 F.Supp. 1166] * * *". Id.
 {¶ 34} However, the United States District Court for the Northern District of Ohio, Eastern Division, certified the following question to the Ohio Supreme Court for its determination: "[f]or purposes of Ohio Rev. Code Ann. [Chapter] 4112, may a supervisor/manager be held jointly and/or severally liable with his employer for his conduct in violation of [R.C. Chapter] 4112?" Genaro v. Central Transport, Inc., 84 Ohio St.3d 293,295, 1999-Ohio-352, 703 N.E.2d 782, 784. [Hereinafter cited as "Genaro"].
 {¶ 35} Appellant correctly notes that the Ohio Supreme Court held that a supervisor/manager can be held jointly and/or severally liable with his employer for his discriminatory conduct found to be in violation of R.C. Chapter 4112.
 {¶ 36} In Genaro, supra, the Ohio Supreme Court disagreed with the federal courts interpretation of R.C. Chapter 4112. The Court noted "R.C. 4112.02 provides that `[i]t shall be an unlawful discriminatory practice: (A) [f]or any employer, because of the race, color, religion, sex, national origin, handicap, age, or ancestry of any person, * * * to discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment.' R.C. 4112.01(A) (2) defines `employer' as "any person employing four or more persons within the state, and anyperson acting directly or indirectly in the interest of an employer.'
(Emphasis added.) Further, the term `person' is defined very broadly by R.C. 4112.01(A)(1) as including "one or more individuals, * * * any owner, lessor, assignor, * * * agent, [and] employee.' It is clear that the R.C. 4112.01(A)(2) definition of `employer,' by its very terms, encompasses individual supervisors and managers whose conduct violates the provisions of R.C. Chapter 4112.
 {¶ 37} * * * *
 {¶ 38} "As previously set forth herein, R.C. 4112.01(A) (2) defines "employer" as "any person employing four or more persons within the state, * * * and any person acting directly or indirectly in the interestof an employer." (Emphasis added.) In contrast, under Title VII, "employer" is defined as "a person engaged in an industry affecting commerce who has fifteen or more employees * * * and any agent of such aperson." (Emphasis added.) Section 2000e (b), Title 42, U.S. Code. The differing numerosity requirements and uses of agency terminology indicate that Title VII's definition of "employer" is far less reaching than the encompassing language of R.C. 4112.01(A) (2). Without doubt, the language employed by the General Assembly with regard to R.C. 4112.01(A) (2) is much broader in scope than that employed by the analogous Title VII provision.
 {¶ 39} "Based on the foregoing, we believe that the clear and unambiguous language of R.C. 4112.01(A)(1) and (A)(2), as well as the salutary antidiscrimination purposes of R.C. Chapter 4112, and this court's pronouncements in cases involving workplace discrimination, all evidence that individual supervisors and managers are accountable for their own discriminatory conduct occurring in the workplace environment. Accordingly, we answer the certified question in the affirmative and hold that for purposes of R.C. Chapter 4112, a supervisor/manager may be held jointly and/or severally liable with her/his employer for discriminatory conduct of the supervisor/manager in violation of R.C. Chapter 4112."Genaro, supra, 84 Ohio St.3d at 296-300, 703 N.E.2d at 785-88.
 {¶ 40} The definition of "employer" under the whistleblower statute, R.C. 4113.52, is more closely aligned with the definition of "employer" found in Title VII. Specifically, both R.C. 4113.52 and Title VII use "agency terminology" as opposed to the "any person acting directly orindirectly in the interest of an employer" language of R.C. 4112.01. The Supreme Court found the use of the "agency terminology" to be far more restrictive in scope.
 {¶ 41} Additionally, we would note that the remedies available pursuant to R.C. 4113.52 are not aimed at individual liability. The aggrieved employee may seek injunctive relief, reinstatement to the same position that the employee held at the time of the disciplinary or retaliatory action and at the same site of employment or to a comparable position at that site, the payment of back wages, full reinstatement of fringe benefits and seniority rights, or any combination of these remedies. R.C. 4113.52 (D); (E). Individual supervisors would lack the authority to reinstate an employee, or authorize the payment of back wages, and benefits. The remedies afforded under the statute are clearly designed to be levied against the corporate entity as opposed to an individual supervisor.
 {¶ 42} The statute speaks directly to employer liability. We determine that the reference to agents of employers is to be included for the purpose of respondeat superior liability of the employer and does not include individual liability but only, in this case, corporate liability.
 {¶ 43} We therefore hold that R.C 4133.52, the "whistleblower" statute, creates liability for the "employer," i.e., the corporate entity. However, a strict and literal reading of the statute, as well as the case law from the Ohio Supreme Court, foreclose finding an individual supervisor liable for wrongful discharge under the statute.
 {¶ 44} We therefore reject Appellant's First Assignment of Error.
 II. {¶ 45} The question presented in appellant's Second Assignment of Error is whether an individual supervisor is subject to the Ohio common law principle that protects employees from being discharged in violation of a clear mandate of public policy. This cause of action is separate and distinct from the question of individual liability under the "whistleblower" statute.
 {¶ 46} In Ohio a claim for wrongful retaliatory discharge is considered a common law tort action. Kulch v. Structural Fibers, Inc.(1997), 78 Ohio St.3d 134, 677 N.E.2d 308;Collins v. Rizkana(1995), 73 Ohio St.3d 65, 652 N.E.2d 653; Greeley v.Miami Valley Maintenance Contractors (1990), 49 Ohio St.3d 228,551 N.E.2d 981. A cause of action in tort for wrongful discharge was created because the legislature could not have intended to leave an employee discharged in violation of a statute without an effective remedy. Provens v. Stark County Board of Mental Retardation Developmental Disabilities (1992), 64 Ohio St.3d 252, 261, 594 N.E.2d 959.
 {¶ 47} "Elements of a cause of action for tortious wrongful discharge in violation of public policy are that: clear public policy existed and was manifested in Constitution, statute or administrative regulation, or in the common law (clarity element); dismissing employees under such circumstances would jeopardize public policy (jeopardy element); plaintiff's dismissal was motivated by conduct related to the public policy (causation element); and employer lacked overriding legitimate business justification for dismissal (overriding justification element)". Kulch v. Structural Fibers, Inc. (1997), 78 Ohio St.3d 134,677 N.E.2d 308. (Per Douglas, J., with two Justices concurring and one Justice concurs in the judgment.).
 {¶ 48} We next address whether the public policy alleged here to have been breached, wrongful retaliation against an employee for reporting suspected criminal activity, i.e., placing, transporting, or delivering adulterated food into the stream of commerce for delivery to the public, is a clear mandate of public policy, and, if so, whether an individual supervisor can be held jointly and severally liable with the corporate employer, independent of the whistleblower statute, for wrongful discharge in violation of the public policy under the common law principles enunciated in Kulch and Greeley.
 {¶ 49} The "public interest in the purity of its food is so great as to warrant the imposition of the highest standard of care on distributors." Smith v. California (1959), 361 U.S. 147, 152, 80 S.Ct. 215,218. In United States v. Dotterweich (1943), 320 U.S. 277, 64 S.Ct. 134, the Court noted; "[t]he Food and Drugs Act of 1906 was an exertion by Congress of its power to keep impure and adulterated food and drugs out of the channels of commerce. By the Act of 1938, Congress extended the range of its control over illicit and noxious articles and stiffened the penalties for disobedience. The purposes of this legislation thus touch phases of the lives and health of people which, in the circumstances of modern industrialism, are largely beyond self-protection". Id. at 280,64 S.Ct. 136. "The question presented by the Government's petition for certiorari in United States v. Dotterweich, supra, and the focus of this Court's opinion, was whether `the manager of a corporation, as well as the corporation itself, may be prosecuted under the Federal Food, Drug, and Cosmetic Act of 1938 for the introduction of misbranded and adulterated articles into interstate commerce.'" United States v. Parks
(1975) 421 U.S. 658, 667, 95 S.Ct. 1903, 1909. The Parks court noted: "[c]entral to the Court's conclusion that individuals other than proprietors are subject to the criminal provisions of the Act was the reality that `the only way in which a corporation can act is through the individuals who act on its behalf.' Id., at 281, 64 S.Ct. at 136. The Court also noted that corporate officers had been subject to criminal liability under the Federal Food and Drugs Act of 1906, and it observed that a contrary result under the 1938 legislation would be incompatible with the expressed intent of Congress to `enlarge and stiffen the penal net' and to discourage a view of the Act's criminal penalties as a `license fee for the conduct of an illegitimate business.' 320 U.S., at 282
— 283, 64 S.Ct., at 137. (Footnote omitted.)." Id. at 421 U.S. 668-69,95 S.Ct. 1903, 1909.
 {¶ 50} Thus, "the Government establishes a prima facie case when it introduces evidence sufficient to warrant a finding by the trier of the facts that the defendant had, by reason of his position in the corporation, responsibility and authority either to prevent in the first instance, or promptly to correct, the violation complained of, and that he failed to do so. The failure thus to fulfill the duty imposed by the interaction of the corporate agent's authority and the statute furnishes a sufficient causal link. The considerations which prompted the imposition of this duty, and the scope of the duty, provide the measure of culpability". Parks, supra, 421 U.S. at 673-74, 95 S.Ct. at 1912.
 {¶ 51} Ohio has expressed a similar intent to extend the responsibility for protecting the integrity of the public's food supply to the individual agents of a corporate entity. In Meyer v. State the Ohio Supreme Court noted "[b]y their titles and provisions they disclose the purpose of the general assembly to prevent the sales of the articles described, and to accomplish that purpose by imposing penalties upon all who sell or offer them. The agent is within the terms of the statute, because he personally participated in its violation, and the principal is responsible for what he does by another. Any other construction of the statute would afford an easy method for defeating its purpose, and it would extend to those who are likely to know of the adulteration of the article sold immunity from the penalty which is imposed upon others who have not such knowledge". 54 Ohio St. 242, 244, 43 N.E. 164, 165.
 {¶ 52} We therefore have at least two main sources of public policy. Each of these two sources of public policy is independently sufficient to justify an exception to the employment-at-will doctrine and to warrant recognition of a cause of action for wrongful discharge in violation of public policy. There is no question that the federal and State policies favoring reporting violations of the regulations designed to keep impure and adulterated food and drugs out of the channels of commerce is so great as to warrant the imposition of the highest standard of care not only on the corporate entity, but also on each individual who has, by reason of his position in the corporation, responsibility and authority either to prevent in the first instance, or promptly to correct, any violation. Allowing an individual supervisor who actively participates or acquiesces in the discharge of an employee for reporting violations of the regulations designed to keep impure and adulterated food and drugs out of the channels of commerce to escape liability would defeat this policy.
 {¶ 53} Appellant's second cause of action is not based upon the whistleblower statute; rather appellant is alleging a violation of common law tort principles. Support for permitting an individual supervisor to be sued for wrongful discharge is found in the general principles of agency and tort law.
 {¶ 54} It is a long-standing rule that "[a]n agent who does an act otherwise a tort is not relieved from liability by the fact that he acted at the command of the principal or on account of the principal."Restatement (Second) of Agency § 343 (1958); see also Restatement(Second) of Agency § 217B1957) (stating that "[p]rincipal and agent can be joined in an action for a wrong resulting from the tortious conduct of an agent or that of agent and principal, and a judgment can be rendered against each."
 {¶ 55} "Ohio law provides that a corporate officer can be held personally liable for a tort committed while acting within the scope of his employment." Atram v. Star Tool Die Corp. (1989),64 Ohio App.3d 388, 393, 581 N.E.2d 1110 (where the Eighth District explains how the general principles of agency law are applicable to corporate officers and agents), citing Bowes v. Cincinnati RiverfrontColiseum (1983), 12 Ohio App.3d 12, 18, 12 OBR 97, 465 N.E.2d 904. "Directors and corporate officers generally may be personally liable for fraud even though the corporation may be liable also." Centennial Ins.Co. of N.Y. v. Vic Tanny Internatl. of Toledo, Inc. (1975),46 Ohio App.2d 137, 141, 75 O.O.2d 115, 346 N.E.2d 330. See, also,Mkparu v. Ohio Heart Care, Inc. (1999), 138 Ohio App.3d 7, 27,740 N.E.2d 293; Heritage Funding Leasing Co. v. Phee (1997),120 Ohio App.3d 422, 698 N.E.2d 67, (where the Tenth District reversed the trial court's decision that it had no personal jurisdiction over defendants because they are merely agents of the corporate defendant);Cent. Benefits Mut. Ins. Co. v. RIS Admrs. Agency, Inc. (1994),93 Ohio App.3d 397, 403, 638 N.E.2d 1049. "This rule does not depend on the same grounds as `piercing the corporate veil,' that is inadequate capitalization, use of the corporate form for fraudulent purposes, or failure to comply with the formalities of corporate organization. 3A W. Fletcher, Cyclopedia of the Law of Private Corporations § 1135 at 267 (1986 Supp. 1990) (cases cited) ("W. Fletcher")". SymbolTechnologies, Inc. v. Metrologic Instruments, Inc. (D.N.J.),771 F.Supp. 1390, 1402. See also, Atram v. Star Tool Die Corp.,supra, 64 Ohio App.3d at 393, 581 N.E.2d at 1113; Yo-Can, Inc. v. TheYogurt Exchange, Inc. (2002), 149 Ohio App.3d 513, 527, 778 N.E.2d 80,91; Lambert v. Kazinetz (S.D. OH. 2003), 250 F.Supp. 908-914-15.
 {¶ 56} Further support for holding an individual supervisor liable in tort under the Ohio common law principle that protects employees from being discharged in violation of a clear mandate of public policy can be found in a review of the case law from our sister states.
 {¶ 57} The Supreme Court of New Jersey has identified the competing interests at stake in creating liability for the tort of wrongful discharge. In Pierce v. Ortho Pharmaceutical Corp. (1980), 84 N.J. 58,417 A.2d 505, the Court noted: "we must balance the interests of the employee, the employer, and the public. Employees have an interest in knowing they will not be discharged for exercising their legal rights. Employers have an interest in knowing they can run their businesses as they see fit as long as their conduct is consistent with public policy. The public has an interest in employment stability and in discouraging frivolous lawsuits by dissatisfied employees". Id. at 71, 417 A.2d at 511.
 {¶ 58} In Borecki v. Eastern International Management Corp. (1988),694 F.Supp. 47 the Court utilized the four Pierce factors to determine whether an individual who is not an employer may be liable for a tortious termination of employment. Id. at 57. In answering that question in the affirmative, the Court first noted that the high threshold showing which a plaintiff must make is an adequate safeguard to meritless lawsuits. Thus, "[i]f an employee does not point to a clear expression of public policy, the court can grant a motion to dismiss or for summary judgment".Pierce, supra, at 73. Second, the Court in Borecki supra noted: "[a]n employee's interest in knowing he will not be discharged for exercising his legal rights will be furthered if the individual responsible for the decision, as well as their common corporate employer, is amenable to suit. The typical decision maker contemplating the wrongful discharge of a subordinate would then need to consider not only the adverse employment consequences which he would incur from a lawsuit against his corporate employer, but also the possibility that he would be amenable to suit". Id. at 59. The Court addressed the remaining three Pierce factors: "[n]or would the public interest in employment stability and in discouraging baseless litigation be offended by permitting [the individual] to be sued. As we have noted, the high threshold showing which a plaintiff must make is an adequate safeguard to meritless lawsuits. To the extent permitting this lawsuit to be maintained will deter the wrongful discharge of employees, of course, the interest in employment stability will thereby be promoted.
 {¶ 59} "Finally, we must consider employers' interest in `knowing they can run their business as they see fit as long as their conduct is consistent with public policy.' Pierce, supra, 84 N.J. 58, 71,417 A.2d 505. Allowing the decision maker to be sued may not only benefit employees through the deterrent effect noted above, but may also benefit employers. By discouraging decision makers from discharging employees for improper reasons — reasons which might have no relationship to the value of the employee to the employer — employers' liability for wrongful discharges will be lessened. While the decision maker's fear of litigation may arguably make him wary of taking appropriate measures in furtherance of the employer's objectives, the limited scope of wrongful discharge actions will serve to minimize any adverse impact to the employer". Id. at 59.
 {¶ 60} "In both New Jersey and Pennsylvania, a claim for wrongful retaliatory discharge may be considered a tort action. Pierce, supra, 84N.J. at 67, 72-73, 417 A.2d 505; Geary, supra, 319 A.2d at 177. Therefore, in both states, an individual who personally participates in the tort of wrongful discharge may be held individually liable. Boreckiv. Eastern Int'l Mgmt. Corp., 694 F.Supp. 47, 56 (D.N.J. 1988) (surveying New Jersey case law regarding individually liability for wrongful discharge); Kamensky v. Roemer Indus. Inc., 1 Pa. D. C. 4th 497, 500 (Ct. of C.P. 1988)". Symbol Technologies, Inc. v. MetrologicInstruments, Inc., supra, 771 F.Supp. at 1402.
 {¶ 61} In the case at bar, appellant alleges that he was discharged from his employment for investigating and reporting what amounts to suspected criminal activity. The individuals that he has named as defendants in this suit are the supervisors who participate in firing him for reporting the violations.
 {¶ 62} The public policy favoring reporting violations of the regulations that are designed to keep impure and adulterated food and drugs out of the channels of commerce would be seriously compromised (jeopardized) if employers were allowed to fire employees for reporting matters to the proper authorities. Obviously, such retaliatory practices could deter employees from reporting what they believe to be legitimate health and safety concerns. This clear expression of public policy will be furthered if the individuals responsible for the decision, as well as their common corporate employer, are amenable to suit. The typical decision maker contemplating the wrongful discharge of a subordinate would then need to consider not only the adverse employment consequences which he would incur from a lawsuit against his corporate employer, but also the possibility that he would be amenable to suit. Borecki v.Eastern International Management Corp., supra, 694 F.Supp at 59. Individual liability will further encourage each individual in the chain of distribution to report violations of regulations that are designed to keep impure and adulterated food and drugs out of the channels of commerce. This is a matter of tremendous public concern touching the lives of every man, woman and child in our society. The public should neither expect nor settle for less than full accountability of each person in the chain of supply and distribution. To permit an individual supervisor to escape liability for wrongfully discharging a subordinate who reports such a violation is to betray the public's confidence in the integrity of those individuals charged with guarding the public health.
 {¶ 63} The Appellant's Second Assignment of Error is affirmed.
 {¶ 64} This cause is affirmed in part and reversed in part and the case is remanded to the trial court for proceedings not inconsistent with this opinion. Costs to Appellee.
Gwin, J., Boggins, P.J. and Hoffman, J. concur
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the Coschocton County Court of Common Pleas is affirmed in part and reversed in part, and this case is remanded to the trial court for further proceedings not inconsistent with this opinion. Costs assessed to appellee.