OPINION
{¶ 1} Plaintiff-appellant Mary Miller appeals the May 20, 2005 Summary Judgment Entry entered by the Richland County Court of Common Pleas, which granted summary judgment in favor of defendant-appellee MedCentral Health System.
 STATEMENT OF THE FACTS AND CASE {¶ 2} MedCentral is a non-profit health system which owns and operates the Mansfield and Shelby Hospitals located in Richland County, Ohio. MedCentral employs over 2,600 employees at these two facilities. In February, 2000, MedCentral hired Miller in the food and nutrition department at Mansfield Hospital. Miller's duties involved serving and preparing food in the hospital cafeteria. Miller was transferred within the department shortly after commencing her employment with MedCentral to the position of storeroom clerk. As the storeroom clerk, Miller was responsible for ordering inventory, and loading and rotating stock for the hospital cafeteria. Between 2000, and 2002, Miller's supervisors gave her strong reviews with respect to her job performance, but consistently noted problems with her workplace attitude, in particular her interaction with coworkers and supervisors.
 {¶ 3} In August, 2002, Miller transferred to a position at Shelby Hospital. Miller was assigned to the kitchen, and her supervisor was Eileen Smith. The kitchen at Shelby Hospital prepares meals for the patients as well as hospital visitors and staff. In December, 2002, Carol Brown, another employee at the hospital, retired from the cafeteria. According to Miller, she had been told during her interview she would be able to work as a cook on the day shift after Brown's retirement. Upon Brown's retirement, Smith scheduled Shirley Wills for the majority of the hours for the day shift cook position.
 {¶ 4} Carol Brown retired on December 6, 2002. The following day, Miller began to keep a journal detailing Wills' job performance. Miller journalized what she believed to be inappropriate conduct, unsafe practices and favoritism toward Wills. Miller addressed her concerns with Smith, but claims Smith was unresponsive. On March 17, 2003, Miller sent a letter to Ron Distal, Vice President of MedCentral, outlining the unsanitary practices she observed in the kitchen as well as her fears for the safety of those consuming the food. Distal arranged a meeting between himself, Eileen Smith, and Miller. During the meeting, Smith denied all of Miller's allegations. Distal advised both women he would investigate the situation. During the meeting with Distal, Miller also complained Shirley Wills was getting the work schedule she (Miller) felt she had been promised.
 {¶ 5} On or about April 7, 2003, Miller applied for a food service job at Ashland Samaritan Hospital. Miller informed several of her co-workers as well as Smith she was interviewing for the position. At this time, Miller also informed Smith she would drop all the issues she had raised in her memorandum to Ron Distal and would try to get along with Wills in exchange for a better work schedule. Smith told Miller she was unable to make such an accommodation. According to Miller, when she commented to Smith it did not sound like the supervisor wanted her to stay, Smith replied, "No I don't. I can't see you changing the way you work or your perfectionism." Miller deposition at 1951-96. Miller put in for two transfers to Mansfield Hospital, one in food service and the other in housekeeping. In a response to Smith's asking Miller to put her employment intentions in writing, Miller stated she did not need to provide a written resignation as she was transferring internally. On April 22, 2003, Miller arrived at work and found her hours had been marked off the work schedule for the food service department at Shelby Hospital. Two days later, at Smith's request, Miller returned her keys. Miller contacted Beth Hildreth in the MedCentral Human Resources department regarding her job transfer and was informed she was no longer employed at MedCentral. In June, 2003, Miller made her first and only complaint to the Occupational Safety and Health Administration ("OSHA") regarding the alleged unsanitary conditions at Shelby Hospital. OSHA declined Miller's complaint on June 17, 2003, for lack of jurisdiction.
 {¶ 6} On February 20, 2004, Miller instituted the instant action in the Richland County Court of Common Pleas, alleging wrongful termination in violation of Ohio Public Policy. Following the completion of discovery, MedCentral filed a Motion for Summary Judgment. Via Summary Judgment Entry filed May 20, 2005, the trial court granted summary judgment in favor of MedCentral.
 {¶ 7} It is from this entry Miller appeals, raising the following assignments of error:
 {¶ 8} "I. THE TRIAL COURT ERRED IN HOLDING THAT THE PROVISIONS OF THE OHIO REVISED CODE AND THE OHIO ADMINISTRATIVE CODE PROHIBITING ENTITIES THAT MAINTAIN FOOD SERVICE OPERATIONS FROM ENGAGING IN UNSAFE AND UNSANITARY FOOD PRACTICES WHICH ENDANGER THE PUBLIC HEALTH DO NOT CONSTITUTE THE CLEARLY ESTABLISHED PUBLIC POLICY OF THE STATE OF OHIO.
 {¶ 9} "II. THE TRIAL COURT ERRED IN HOLDING THAT PLAINTIFF FAILED TO ESTABLISH A CLAIM FOR WRONGFUL TERMINATION IN VIOLATION OF THE CLEARLY ESTABLISHED PUBLIC POLICY OF THE STATE OF OHIO FAVORING WORKPLACE SAFETY.
 {¶ 10} "III. THE TRIAL COURT ERRED IN HOLDING THAT A COMMON LAW CLAIM FOR WRONGFUL TERMINATION IN VIOLATION OF OHIO PUBLIC POLICY MAY NOT BE MAINTAINED UNLESS THE PUBLIC POLICY AT ISSUE EXPRESSLY MANDATES THE EMPLOYEE TO REPORT OR PROTECTS THE REPORTING EMPLOYEE.
 {¶ 11} "IV. THE TRIAL COURT ERRED IN HOLDING THAT PLAINTIFF'S CLAIM FOR WRONGFUL TERMINATION IN VIOLATION OF OHIO PUBLIC POLICY WAS PRE-EMPTED BY R.C. 4513.52."
 STANDARD OF REVIEW {¶ 12} Summary judgment proceedings present the appellate court with the unique opportunity of reviewing the evidence in the same manner as the trial court. Smiddy v. The Wedding Party,Inc. (1987), 30 Ohio St.3d 35, 36.
 {¶ 13} Civ.R. 56(C) states, in pertinent part:
 {¶ 14} "Summary Judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . A summary judgment shall not be rendered unless it appears from such evidence or stipulation and only therefrom, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, such party being entitled to have the evidence or stipulation construed most strongly in his favor."
 {¶ 15} Pursuant to the above rule, a trial court may not enter a summary judgment if it appears a material fact is genuinely disputed. The party moving for summary judgment bears the initial burden of informing the trial court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. The moving party may not make a conclusory assertion that the non-moving party has no evidence to prove its case. The moving party must specifically point to some evidence which demonstrates the non-moving party cannot support its claim. If the moving party satisfies this requirement, the burden shifts to the non-moving party to set forth specific facts demonstrating there is a genuine issue of material fact for trial. Vahila v. Hall
(1997), 77 Ohio St.3d 421, 429, citing Dresher v. Burt (1996),75 Ohio St.3d 280.
 {¶ 16} It is based upon this standard we review Miller's assignments of error.
 I {¶ 17} In her first assignment of error, Miller maintains the trial court erred in finding the provisions of the Ohio Revised Code and the Ohio Administrative Code, prohibiting entities which maintain food service operations from engaging in unsafe and unsanitary food practices, do not constitute the clearly established public policy of the State of Ohio. We agree.
 {¶ 18} Pursuant to Greeley v. Miami Valley MaintenanceContractors, Inc. (1990), 49 Ohio St.3d 228, a discharged employee has a private cause of action sounding in tort for wrongful discharge where his or her discharge is in contravention of a "sufficiently clear public policy." Id. at 233 (Citation omitted). In Greeley, the Ohio Supreme Court recognized public policy was "sufficiently clear" where the General Assembly had adopted a specific statute forbidding an employer from discharging or disciplining an employee on the basis of a particular circumstance or occurrence. The Greeley Court noted other exceptions might be recognized where the public policy could be deemed to be "of equally serious import as the violation of a statute." Id. at 235. "The existence of such a public policy may be discerned by the Ohio judiciary based on sources such as the Constitutions of Ohio and the United States, legislation, administrative rules and regulations, and the common law."Painter v. Graley (1994), 70 Ohio St.3d 377, 384.
 {¶ 19} In order to establish a claim for wrongful termination in violation of Ohio public policy, a plaintiff must demonstrate:
 {¶ 20} "1. That clear public policy existed and was manifested in a state or federal constitution, statute or administrative regulation, or in the common law (the clarity
element).
 {¶ 21} "2. That dismissing employees under circumstances like those involved in the plaintiff's dismissal would jeopardize the public policy (the jeopardy element).
 {¶ 22} "3. The plaintiff's dismissal was motivated by conduct related to the public policy (the causation element).
 {¶ 23} "4. The employer lacked overriding legitimate business justification for the dismissal (the overriding justification
element)." Id. (Emphasis sic).
 {¶ 24} The clarity and the jeopardy elements are questions of law and policy to be determined by the court. Kulch v.Structural Fibers, Inc. (1997), 78 Ohio St.3d 134, 151, citingCollins v. Rizkana (1995), 73 Ohio St.3d 65, 70. The causation and overriding justification elements are questions of fact to be determined by the trier of fact. Id.
 {¶ 25} Miller identified two separate and distinct sources of public policy supporting her claim:
 {¶ 26} 1) "Provisions of the Ohio Revised Code and Ohio Administrative Code providing specific standards for the handling and storage of food for human consumption by regulated entities and therefore represent `a clear public policy of protecting the public health and welfare through the use of safe food handling practices'.
 {¶ 27} Brief of Appellant at 10.
 {¶ 28} 2) "The common-law public policy favoring workplace safety recognized by The Supreme Court of Ohio in Pytlinski v.Brocar Products (2002), 94 Ohio St.3d 77."
 {¶ 29} The trial court found, as a matter of law, Miller could not satisfy the clarity and jeopardy elements as the provisions of the Ohio Revised Code and Ohio Administrative Code relied upon by Miller neither require an employee to report violations nor afford protection to a reporting employee from employer retaliation; therefore, Miller could not base her common-law cause of action upon such provisions. We disagree.
 {¶ 30} In Armstrong v. Trans-Service Logistics, Inc.,
Coshocton App. No. 04CA15, 2005-Ohio-2723, this Court found: "The public policy favoring reporting violations of the regulations that are designed to keep impure and adulterated food and drugs out of the channels of commerce would be seriously compromised (jeopardized) if employers were allowed to fire employees for reporting matters to the proper authorities. Obviously, such retaliatory practices could deter employees from reporting what they believe to be legitimate health and safety concerns." Id. at ¶ 62.
 {¶ 31} In Armstrong, an employee discovered a shipment of meat being transported by his employer was refrigerated at too high a temperature and reported such to his employer. Id. at ¶ 3. Despite having been advised, his employer shipped the meat. The employee reported the situation to the federal authorities, who inspected and subsequently destroyed the meat. Thereafter, the employee was fired. The employee filed a suit under the Ohio Whistleblower Statute as well as a common-law theory of violation of public policy. This Court found both "federal and Ohio public policy favor reporting violations of the regulations designed to keep impure and adulterated food out of the channels of commerce is so great as to warrant the imposition of the highest standard of care." Id. at ¶ 52.
 {¶ 32} We find the same rationale applies herein. The kitchen at Shelby Hospital is responsible for food eaten not only by visitors and staff at the hospital, but also the patients being cared for at the facility. Accordingly, we find the allegations made by Miller as embodied in the Ohio Revised Code and Ohio Administrative Code are sufficient to justify an exception to the employment-at-will doctrine and to warrant recognition of a cause of action for wrongful discharge in violation of public policy. Furthermore, we find a common-law public policy exists in favor of regulating the safekeeping of food, which is independently sufficient to justify an exception to the employment-at-will doctrine.
 {¶ 33} Based upon the foregoing, we find the trial court erred in finding the provisions of the Ohio Revised Code and the Ohio Administrative Code, which set forth specific standards for the handling and storage of food for human consumption by regulated entities, do not constitute the clearly established public policy of the State of Ohio.
 {¶ 34} Miller's first assignment of error is sustained.
 II {¶ 35} In her second assignment of error, Miller submits the trial court erred in holding she failed to establish a claim for wrongful termination in violation of the clearly established public policy of the State of Ohio which favors workplace safety.
 {¶ 36} "Ohio public policy favoring workplace safety is an independent basis upon which a cause of action for wrongful discharge in violation of public policy may be prosecuted."Pytlinski v. Brocar Prod., Inc. (2002), 94 Ohio St.3d 77, 80,2002-Ohio-66.
 {¶ 37} It is undisputed, in the instant action, the food prepared and served by the kitchen at Shelby Hospital was served not only to hospital patients and visitors, but also to hospital employees including nurses, doctors, and administrative staff. We find the conditions alleged by Miller could jeopardize the health of the hospital staff, which is clearly an issue of workplace safety. Accordingly, we find the Ohio common-law public policy favoring workplace safety is a source of public policy upon which Miller may maintain a common-law claim for wrongful discharge and the trial court erred in granting summary judgment on this ground.
 {¶ 38} Miller's second assignment of error is sustained.
 III {¶ 39} In her third assignment of error, Miller submits the trial court erred in finding she could not maintain a common-law claim for wrongful termination because the violation of public policy upon which she relied did not expressly mandate an employee to report the violation or expressly protect a reporting employee.
 {¶ 40} The trial court found Miller failed to establish the jeopardy element of her common-law claim, explaining: "use of this common-law cause of action after the adoption of the whistleblower statute has been confined primarily to those situations where a law expressly mandates the employee to report or protects the reporting employee. That is, only in those situations does the dismissal of employees jeopardize public policy (the jeopardy element)." Summary Judgment Entry at 5. We disagree.
 {¶ 41} The Pytlinski Court expressly held, "the elements of the tort do not include a requirement that there be a complaint to a specific entity, only that the discharge by the employer be related to the public policy." 94 Ohio St.3d at 80, note 3. We hold the fact neither the Ohio Revised Code nor the Ohio Administrative Code mandate an employee to report the violation or specifically protect the reporting employee from retaliation does not foreclose a discharged employee from maintaining a common-law claim for wrongful discharge.
 {¶ 42} Here, Miller reported the violations to her employer as required by MedCentral's compliance policies. Miller followed corporate policy. Miller's failure to report the alleged violations to a specific entity is irrelevant as the focus is on whether the discharge by the employer was related to the public policy. As stated supra, the Pytlinski Court held "Ohio public policy favoring workplace safety is an independent basis upon which a cause of action for wrongful discharge in violation of public policy may be prosecuted." In discerning that public policy, the Pytlinski Court did not confine its analysis to the Occupational Safety and Health Administration regulations, but referenced a wide variety of Ohio statutes and constitutional provisions addressing workplace safety, many of which do not contain an express reporting requirement or a specific prohibition on terminating an employee for reporting violations thereof.
 {¶ 43} Based upon the foregoing, we find the trial court erred in holding Miller could not maintain her common-law claim for wrongful termination because the public policy did not contain an express reporting requirement or a specific prohibition against terminating an employee for reporting violations.
 {¶ 44} Miller's third assignment of error is sustained.
 IV {¶ 45} In her final assignment of error, Miller contends the trial court erred in holding her claim for wrongful termination in violation of Ohio Public Policy was preempted by R.C. 4113.52. We agree.
 {¶ 46} The trial court ruled Miller could not maintain a common-law public policy claim, as a matter of law, because she had failed to comply with the requirements of R.C. 4113.52, and she could not use a common-law public policy claim to escape or circumvent such compliance. The trial court reasoned the use of a public policy tort claim where R.C. 4113.52 could have been asserted would make the statute of no effect. Implicit in the trial court's entry is a determination if a plaintiff cannot meet the statutory provisions, the statute preempts a common-law public policy claim.
 {¶ 47} In Collins v. Rizkana (1995), 73 Ohio St.3d 65, the Ohio Supreme Court held: "In cases of multiple-source public policy, the statute containing the right and remedy will not foreclose recognition of the tort on the basis of some other source of public policy, unless it was the legislature's intent in enacting the statute to preempt common-law remedies. Bennettv. Hardy (1990), 113 Wash.2d 912, 784 P.2d 1258; Rojo, supra;Froyd v. Cook (E.D.Cal. 1988), 681 F.Supp. 669; Drinkwalter v.Shipton Supply Co., Inc. (1987), 225 Mont. 380, 732 P.2d 1335Holien, supra, 298 Ore. at 91-97, 689 P.2d at 1300-1303. See, also, Phillips v. J.P. Stevens Co., Inc. (M.D.N.C. 1993), 827 F.Supp. 349, 352-353. Id at 73. We find nothing in the text of R.C. 4113.52 which suggests the Ohio legislature intended to preempt the pursuit of a common-law remedy for wrongful termination when it enacted the whistleblower statute. In fact, in Kulch v. Structural Fibers, Inc. (1997) 78 Ohio St.3d 134, the Ohio Supreme Court held `R.C. 4113.52 does not preempt a common-law cause of action against an employer who discharges or disciplines an employee in violation of that statute' and `an at-will employee who is discharged or disciplined in violation of R.C. 4113.52 may maintain a statutory cause of action for the violation, a common-law cause of action at tort, or both'." Id at ¶ 2 and 5 of the syllabus.
 {¶ 48} Accordingly, we find the trial court erred in implicitly finding Miller's common-law claims were preempted by R.C. 4113.52.
 {¶ 49} Miller's fourth assignment of error is sustained.
 {¶ 50} The judgment of the Richland County Court of Common Pleas is reversed and the matter remanded for further proceedings consistent with this opinion and the law.
Hoffman, P.J., Farmer, J. and Edwards, J. concur.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Richland County Court of Common Pleas is reversed and the matter remanded for further proceedings in accordance with our opinion and the law.
Costs assessed to appellees.